# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1867

_____

| | | |
|---|---|---|
| Michael Louis Persechini, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| L. Callaway; Sheriff Jerry Smith; | * | Western District of Missouri. |
| Brian O'Connell; Virgil Landsdown; | * | |
| Patricia Cornell, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: March 17, 2011
Filed: August 10, 2011

_____

Before RILEY, Chief Judge, LOKEN and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Michael Louis Persechini was convicted of second-degree burglary in a Missouri state court and sentenced to fifteen years in prison. With the prior approval of the Missouri Department of Corrections, the trial court also sentenced him as a chronic nonviolent offender with a serious drug addiction to the Department's long-term substance-abuse treatment program at the Ozark Correctional Center ("OCC"). Had he successfully completed this program, Persechini would have been eligible for probation. See Mo. Rev. Stat. § 217.362 (2) & (3). Instead, he was terminated from the program after pleading guilty to violating one of the Department's "cardinal

rules," in this case, theft of a towel from the prison's property room. Termination resulted in the mandatory execution of his fifteen-year sentence. See § 217.362(4).

Persechini then commenced this 42 U.S.C. § 1983 action against five OCC officials, alleging that the program termination violated his federal due process rights. He sought damages and re-entry into the treatment program, with probation eligibility restored upon successful completion. The district court[1] dismissed all claims for failure to state a claim upon which relief could be granted. Persechini appeals. Reviewing the district court's dismissal *de novo*, we affirm. See Reynolds v. Dormire, 636 F.3d 976, 979 (8th Cir. 2011) (standard of review).[2]

## I.

The due process issues raised by this appeal are rather unique because of the terms of the applicable sentencing statute. Mo. Rev. Stat. § 217.362 provides, in relevant part:

> 1. The department of corrections shall design and implement an intensive long-term program for the treatment of chronic nonviolent offenders with serious substance abuse addictions who have not pleaded guilty to or been convicted of a dangerous felony . . . .

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

[2]We disagree with the district court's conclusion that habeas corpus was the exclusive federal remedy for some of Persechini's claims. Success on those claims "*would not necessarily* spell immediate or speedier release" from custody because, at the time of his allegedly wrongful termination from the treatment program, there were two uncertain prerequisites to a term of probation, successful completion of treatment *and* approval by the sentencing judge. Wilkinson v. Dotson, 544 U.S. 74, 81 (2005) (emphasis in original); see § 217.362(3).

2. Prior to sentencing, any judge considering an offender for this program shall notify the department. The potential candidate for the program shall be screened by the department to determine eligibility. . . . [I]f an offender is eligible and there is adequate space, the court may sentence a person to the program which shall consist of institutional drug or alcohol treatment for a period of at least twelve and no more than twenty-four months, as well as a term of incarceration. The department shall determine the nature, intensity, duration, and completion criteria . . . of any program services provided. Execution of the offender's term of incarceration shall be suspended pending completion of said program . . . .

3. Upon successful completion of the program, the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. If the court determines that probation is not appropriate the court may order the execution of the offender's sentence.

4. If it is determined by the department that the offender has not successfully completed the program, or that the offender is not cooperatively participating in the program, the offender shall be removed from the program and the court shall be advised. Failure of an offender to complete the program shall cause the offender to serve the sentence prescribed by the court and void the right to be considered for probation on this sentence.

(Emphasis added.) For reasons that will become apparent, consideration of these due process issues requires a brief summary of the proceedings conducted by the Department of Corrections and each defendant's role in those proceedings.

Persechini's § 1983 complaint alleged that he appeared before defendant L. Callaway at a disciplinary hearing held to consider a Conduct Violation Report. The Report stated that Persechini had pleaded guilty to charges that he violated "rule # 22.1 Theft" and "rule # 20.1 Disobeying an Order" by taking a new towel from the property room. Persechini claimed that the initial interviewing officer had said he

could plead guilty only to the less-serious violation of rule 20.1.  He protested that he did not steal the towel and urged Hearing Officer Callaway to contact the interviewing officer and two property room custodians.  Instead, Callaway prepared and Persechini signed a Disciplinary Action Report that left blank the section captioned "Findings and Evidence Relied On."  In the "Recommendation" section of the Disciplinary Action Report, Hearing Officer Callaway wrote:

> (1) D-3  Living Area Restriction 10 days
> (2) C-4  Refer to Program Review Committee

The § 1983 complaint alleged that defendants Jerry Smith and Deputy Warden Brian O'Connell signed the "Recommended as Submitted" and "Approved as Submitted" sections of the Report, knowing the "Evidence Relied On" section was not completed.

Five days later, Persechini appeared before the Program Review Committee, chaired by defendant Jerry Smith.  Persechini claimed that he was innocent of theft and asked the Committee to contact a property custodian for exculpatory information.  Instead, Smith stated that Persechini was being terminated from the treatment program for a Cardinal Rule violation.  He was transferred to administrative segregation and, six days later, appeared at a Classification Hearing.  The three-member Classification Committee recorded Persechini's statement -- "I didn't steal the towel, I just meant to trade up" -- and ordered him transferred to another facility because he had been terminated from the treatment program.

Persechini then filed an Offender Grievance protesting the conduct violation and asking that witnesses be contacted.  The § 1983 complaint alleged that OCC Superintendent Virgil Landsdown and Deputy Division Director Patricia Cornell denied his grievance on the merits despite the fact that Hearing Officer Callaway's Disciplinary Action Report was facially deficient because the "Evidence Relied On" section was not completed.

## II.

To prevail on his § 1983 due process claims, Persechini must establish that he was deprived of a protected liberty interest. Sandin v. Conner, 515 U.S. 472, 487 (1995). "Protected liberty interests may arise from two sources -- the Due Process Clause itself and the laws of the States." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (quotation omitted). In this rather unique case, both potential sources must be explored.

In Sandin, the Supreme Court refocused the inquiry into the second source of liberty interests -- whether the State has created a liberty interest if the alleged deprivation is an adverse change in an inmate's conditions of confinement. When the Due Process Clause does not itself confer a liberty interest, the Court explained, whether state law has created a protected interest turns on whether the challenged conditions impose "atypical or significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484. In applying this standard, we bear in mind that a liberty interest "is an interest in the nature of [the inmate's] confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined." Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010), quoting Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996).

In this case, the Department first conducted a misconduct proceeding that affected only Persechini's conditions of confinement. He was accused of stealing a towel from the property room. Defendant Callaway held a hearing and concluded that he was guilty of the charges, based on his guilty plea after an interview. The sanctions were confinement to his room for ten days, and a referral to the Program Review Committee because he had violated a Cardinal Rule. Persechini does not claim, and could not plausibly claim, that these hardships are either atypical or significant. Therefore, he had no protected liberty interest in the outcome of this routine disciplinary proceeding, and the district court properly dismissed his due process

claims against the four defendants who were involved only in this proceeding and in the denial of Persechini's grievance protesting its outcome -- Callaway, O'Connell, Landsdown, and Cornell -- and the claim against Smith for approving Callaway's allegedly deficient Disciplinary Action Report.

More serious adverse consequences resulted from the separate action taken by the Program Review Committee, chaired by defendant Smith. This was not a mere ministerial action -- a 2004 Department procedure provided that, when the Committee received a referral from a disciplinary hearing officer, its options included no fewer than eight alternative recommendations, ranging from no action to termination from the treatment program.[3] Here, the Committee elected termination. One result of this action is that Persechini was denied the benefits of long-term drug treatment and transferred to a more restrictive prison facility.[4]

Persechini argues that this claim was improperly dismissed because he had a plausible liberty interest in avoiding the "atypical and significant hardship" of termination from the long-term substance-abuse treatment program. We disagree. Without question, treatment for inmates who suffer from drug addictions may provide significant benefits. But denying or terminating drug abuse treatment, like denial or termination of other discretionary prison programs, does not result in either an atypical or a significant hardship in relation to the remainder of the prison population. Thus, there is no protected liberty interest, for example, in the sentence reduction that may be granted upon completing a Bureau of Prisons drug treatment program,

_____

[3]We fail to see the basis for Defendants' assertion that we cannot consider the MDOC Policy and Procedures Manual in our analysis. See Roubideaux v. N. D. Dep't of Corr. & Rehab., 570 F.3d 966, 979 (8th Cir. 2009).

[4]The transfer was separately ordered by a Classification Committee after Persechini was terminated from the treatment program. Inmates have no procedural due process protection from routine classification decisions. See Meachum v. Fano, 427 U.S. 215, 228-29 (1976).

Giannini v. Fed. Bureau of Prisons, 405 F. App'x 96, 97 (8th Cir. 2010) (unpublished); or in halfway-house placement after completing a drug-treatment program, Staszak v. Romine, 2000 WL 862836, at *1 (8th Cir. June 29, 2000) (unpublished); or in remaining in a work release program, Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668 (8th Cir. 1996); or in participating in a drug treatment program to qualify for early release, Koch v. Moore, 1995 WL 141733, at *1 (8th Cir. April 4, 1995) (unpublished); or in remaining in a discretionary "shock incarceration program," Klos v. Haskell, 48 F.3d 81, 88 (2d Cir. 1995); or in participating in Missouri's sex offender treatment program, Jones v. Moore, 996 F.2d 943, 945 (8th Cir. 1993).[5]

The remaining adverse consequences of the Program Review Committee's action were prescribed by statute: "Failure of an offender to complete the program shall cause the offender to serve the sentence prescribed by the court and void the right to be considered for probation on this sentence." Mo. Rev. Stat. § 217.362(4). These adverse sentencing consequences were more than a change in the conditions of Persechini's confinement, raising the question whether the Due Process Clause itself conferred a liberty interest. The question is framed by pre-Sandin decisions. In Morrissey v. Brewer, 408 U.S. 471, 482 (1972), the Court held that an inmate released on parole has a liberty interest in not suffering the "grievous loss" of having his conditional freedom revoked. Accord Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (applying the same rule to probation revocation). But in Greenholtz v. Inmates of the Neb. Penal and Corr. Complex, 442 U.S. 1, 9-11 (1979), the Court held that an inmate has no liberty interest, other than what state law might confer, in a discretionary parole release decision. "There is a crucial distinction between being deprived of a liberty

---

[5]Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), on which Persechini relies, is distinguishable. There, sex offender Leamer was sentenced to an indeterminate term at an adult treatment center under a state-created "scheme in which therapy is both mandated and promised, and the Department of Corrections is without discretion to decline the obligation." Id. at 535, 545.

one has," the Court explained, "and being denied a conditional liberty that one desires." Id. at 9; accord Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 464-65 (1981) (holding there is no liberty interest in discretionary sentence commutation decisions).

The general rule flowing from these cases is that "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" Sandin, 515 U.S. at 480 (quotation omitted); see Adams v. Agniel, 405 F.3d 643, 645 (8th Cir. 2005) (no liberty interest in possibility of parole); Marshall v. Mitchell, 57 F.3d 671, 672-73 (8th Cir. 1995) (same ruling under pre-Sandin "substantive state law predicates" test). Thus, Persechini did not have a protected liberty interest in the discretionary probationary release to which he would have become eligible had he successfully completed the Department's treatment program. See Mo. Rev. Stat. § 217.362(3).

At the time of termination, Persechini was subject to a preexisting judicial sentence of fifteen years in prison. The Department terminated him from the treatment program, but a statute mandated that his full sentence then be served. See § 217.362(4); Huffman v. Mo. Dep't of Corr., 45 S.W.3d 546, 548-49 (Mo. App. 2001), aff'd sub nom. Huffman v. Nixon, 98 S.W.3d 553, 553 (Mo. banc 2003). The difference between this case and the more typical discretionary denial of probation is that here, loss of probation eligibility was *mandatory* if the Department terminated Persechini from the treatment program. From a procedural due process perspective, the difference seems significant, and we acknowledge that the Supreme Court might conclude it is enough to confer a liberty interest in the Program Review Committee's decision to recommend termination from the program, rather than imposition of a sanction with less dire potential consequences on Persechini's term of incarceration. See the Court's cautionary comment in Sandin that, "Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence." 515 U.S. at 487.

Persechini's failure to successfully complete the treatment program and, more importantly, the ensuing execution of his fifteen-year sentence were nonetheless consequences "within the sentence [initially] imposed."  Thus, like a Bureau of Prisons decision to deny a sentence reduction after an inmate successfully completes its drug treatment program, we conclude that program termination did not confer a liberty interest because it "mean[t] only that [Persechini] will serve the remainder of his original sentence under typical circumstances."  Richardson v. Joslin, 501 F.3d 415, 419-20 (5th Cir. 2007).

The adverse consequences of the Program Review Committee's decision to terminate Persechini from the treatment program, whether considered separately or in the aggregate, were insufficient to confer a liberty interest for due process purposes. Therefore, we need not consider whether the Program Review Committee's procedures were constitutionally adequate.  The judgment of the district court is modified to dismiss all claims with prejudice and, as so modified, is affirmed.

_____