**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

JOHN DOE,

          Plaintiff-Appellant,

v.

MARGARET HEIL, in her official capacity as Acting Manager of the Colorado Department of Corrections Sex Offender Treatment and Monitoring Program; and ARISTEDES ZAVAROS, in his official capacity as Executive Director of the Colorado Department of Corrections,

          Defendants-Appellees.

No. 11-1335
(D.C. No. 1:08-CV-02342-WYD-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

Plaintiff-Appellant "John Doe" is currently incarcerated in the Colorado

Department of Corrections ("CDOC") after pleading guilty to a sex offense.[1]

Represented by counsel, Mr. Doe filed a complaint in the U.S. District Court for the

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]     The U.S. District Court for the District of Colorado authorized Plaintiff-Appellant to proceed anonymously. The caption and pleadings in this case identify him as John Doe.

District of Colorado, asserting violations of his civil rights pursuant to 42 U.S.C. § 1983.

Specifically, Mr. Doe asked for reinstatement into Colorado's sex-offender treatment

program and for a declaration that the CDOC's policy—promulgated by Defendants-

Appellees Margaret Heil and Aristedes Zavaros, in their official capacities[2]—violated his

Fifth Amendment privilege against compelled self-incrimination and his Fourteenth

Amendment substantive due process liberty interest in receiving treatment. Mr. Doe

appeals from the district court's order dismissing his complaint (as amended) with

---

[2]    Initially, we note that, although Mr. Doe's complaint (and amended complaint as well) named as a defendant the CDOC's Executive Director, in his official capacity, Mr. Doe appears to have misspelled his name. The complaint identifies the Executive Director as "Aristedes Zavaros," when in fact the name of the CDOC's Executive Director at the time that this action was commenced was "Aristedes Zavaras." In this regard, we take note of the CDOC's representation to this court in this litigation regarding the Executive Director's name, Aplee. Br. at 4 n.1, and also judicial notice of our own records, *see, e.g.*, *White v. Colorado*, 82 F.3d 364, 365 (10th Cir. 1996) (identifying "Aristedes Zavaras" as the CDOC's Executive Director); *see also United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (taking judicial notice of publicly filed records of our court). This discrepancy, however, is immaterial for at least two reasons. First, Mr. Zavaras is no longer the CDOC's Executive Director; according to the CDOC's website, it is currently Rick Raemisch, and we take judicial notice of this fact. *See, e.g.*, *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009) (taking judicial notice of information about "the occurrence of Falcon releases" on "[t]he websites of two federal agencies"). Pursuant to Fed. R. App. P. 43(c)(2), Mr. Raemisch is automatically substituted for Mr. Zavaras as the defendant. Second, § 1983 suits against state officials acting in their official capacities are in effect suits against the State. Such suits are permissible under certain circumstances, notwithstanding the restrictions of the Eleventh Amendment—notably, where it is "suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1234 (10th Cir. 2010). Mr. Doe avers that he is only seeking prospective equitable and injunctive relief. And we have no reason to doubt that Mr. Doe's lawsuit is jurisdictionally well-founded.

2

prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's judgment.

# I

Mr. Doe was convicted of a sex offense and sentenced to the CDOC's custody

pursuant to the Colorado Sex Offender Lifetime Supervision Act of 1998, Colo. Rev.

Stat. §§ 18-1.3-1001–1012 ("Lifetime Supervision Act") for an indeterminate period of

six years to life. As of July 2, 2008, Mr. Doe had served the minimum-mandatory term of

six years; the duration of his incarceration from that date forward depends on his

progression in state-mandated sex-offender treatment. *See id.* §§ 16-11.7-105, 18-1.3-

1004(3). For Mr. Doe to be eligible for parole, the parole board must consider whether he

has "successfully progressed in treatment." *Id.* § 18-1.3-1006(1)(a).

Mr. Doe successfully completed Phase I of the CDOC's Sex Offender Treatment

and Monitoring Program and entered Phase II. However, Mr. Doe was terminated from

Phase II of the program for failing a polygraph test. Since then, Mr. Doe has been kept

out of the program for failing subsequent polygraphs and for not providing a full sexual

history and refusing to re-take the polygraph as part of the readmission process.

Mr. Doe filed four CDOC Offender Grievances. The CDOC responded with a

"Right to Sue Letter," in which it denied Mr. Doe's grievances, stating that the program's

prerequisites at issue were not within the CDOC's power to waive. These prerequisites

included the program's policy that an offender's assertion of the Fifth Amendment

privilege against self-incrimination does not protect him from having to take and pass a

3

polygraph examination and from providing a full personal sexual history in order to be readmitted into the program.

Represented by counsel, Mr. Doe filed his complaint in the District of Colorado and (prior to service on the defendants) filed an amended complaint the very next day. The amended complaint asserted three claims: (1) a facial challenge to the CDOC's administrative regulation requiring him to admit the commission of his sex offense and to take a polygraph examination to participate in sex-offender treatment; (2) a violation of Mr. Doe's Fifth Amendment right against self-incrimination because he was required to take a polygraph examination and potentially make incriminating statements, such as possibly admitting to the commission of another sex offense (not the subject of his current conviction); and (3) a substantive due process violation on the grounds that the CDOC's policy or regulation is "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience of a federal judge." Aplt. App. at 18 (Am. Compl., filed Oct. 30, 2008).

The CDOC filed a motion to dismiss pursuant to Rule 12(b)(6). The district court dismissed all of Mr. Doe's claims as barred by the statute of limitations. Then, upon Mr. Doe's motion to amend judgment, the district court reaffirmed its dismissal of Mr. Doe's claims as they pertained to his termination from the program,[3] but gave Mr. Doe the

---

[3] Mr. Doe does not appeal from the district court's order dismissing his claims pertaining to termination from the sex-offender treatment program. This appeal solely concerns the CDOC's requirements for readmission into the program.

4

benefit of a liberal reading of his complaint and reinstated his claims as they related to the CDOC's policies for reentry into the program. The district court noted that Mr. Doe's claims relating to reentry may be time-barred as well, but nonetheless reinstated the claims due to the complaint's lack of clarity as to when Mr. Doe refused to re-take the polygraph and when he first learned of the policies he now challenges.

The CDOC then filed a second motion to dismiss, seeking dismissal of Mr. Doe's claims on the grounds, *inter alia*, that: (1) they were time-barred; (2) his Fifth Amendment claim failed as a matter of law pursuant to Supreme Court and Tenth Circuit precedent; and (3) his substantive due process claim failed as a matter of law because the CDOC's policy cannot be said to shock the conscience of federal judges. The district court granted the CDOC's second motion to dismiss; it dismissed Mr. Doe's action with prejudice. Mr. Doe filed a motion to amend the district court's dismissal order, which the court denied. Mr. Doe timely appealed.

## II

We review a district court's dismissal of a complaint under Rule 12(b)(6) de novo, and apply "the same legal standard as the district court." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011). We must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *see Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).

Our function on a Rule 12(b)(6) motion "is not to weigh potential evidence that the

5

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim [for] which relief may be granted." *Smith*, 561 F.3d at 1098 (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)) (internal quotation marks omitted). In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege sufficient facts to make his claim for relief plausible on its face. *See Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011); *Jordan-Arapahoe*, 633 F.3d at 1025. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted) (internal quotation marks omitted).

"A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Jordan-Arapahoe*, 633 F.3d at 1025. As we have recognized, however, the Supreme Court has "establishe[d] the importance of context to a plausibility determination." *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). In this regard, we made observations in *Gee* that are particularly relevant here:

> Nowhere in the law does context have greater relevance to the validity of a claim than prisoner civil-rights claims. Prisons are a unique environment, and the Supreme Court has repeatedly recognized that the role of the Constitution within their walls is quite limited. Government conduct that would be unacceptable, even outrageous, in another setting

6

may be acceptable, even necessary, in a prison. Consequently, a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts. For example, . . . a prisoner claim may not be plausible unless it alleges facts that explain why the usual justifications for the complained-of acts do not apply.

*Id.* Accordingly, we must be mindful of the prison context in assessing whether Mr. Doe's averments in his amended complaint satisfy the plausibility standard.

## III

We begin by summarizing the district court's rationale for dismissing Mr. Doe's amended complaint. We then discuss the issues that Mr. Doe raises on appeal and outline our resolution of them.

## A

## 1

The district court found that Mr. Doe "ha[d] made the requisite showing of a violation of his Fifth Amendment rights." Aplt. App. at 38 (Dist. Ct. Order, filed March 21, 2011).[4] Consequently, the court proceeded to assess the factors set forth in *Turner*, in

---

[4]    To state an actionable Fifth Amendment claim, Mr. Doe had to prove two things: (1) that the statements desired by the CDOC carried the risk of incriminating him, and (2) "that the penalty he suffered amounted to compulsion." *See United States v. Antelope*, 395 F.3d 1128, 1134 (9th Cir. 2005); *see also Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984); *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977). In its initial round of briefing, the CDOC did not meaningfully contest the district court's conclusion that the elements of a Fifth Amendment violation were satisfied, although it briefly suggested in a footnote that "one can argue" that Mr. Doe's circumstances did not provide the basis for a valid claim of compulsion. Aplee. Br. at 14 n.4.

(continued...)

7

which the Supreme Court held that "when a prison regulation impinges on inmates'

constitutional rights, the regulation is valid if it is reasonably related to legitimate

penological interests." 482 U.S. at 89.

---

[4](...continued)
We ordered the parties to provide supplemental briefing; specifically, we noted that "the question of the availability of use immunity should be more fully developed," and "[w]ithout limiting the matters addressed" "*on that issue*," set forth two questions to guide the parties' briefing. Order, No. 11-1335, at 1–2 (10th Cir., filed July 17, 2012) (emphasis added). Our focus in the order was on how the availability of a use-immunity alternative affected the Supreme Court's analysis in *Turner v. Safley*, 482 U.S. 78 (1987). We noted that satisfaction of the element of compulsion of a Fifth Amendment claim was "an issue predicate to the application of *Turner*," and, as we saw it, the CDOC "ha[d] conceded" that element for purposes of this appeal. Order, No. 11-1335, at 2. Nevertheless, the CDOC seized upon the briefing opportunity presented by our order to advance a full-blown argument concerning the compulsion element, building on the skeletal footnote reference of its initial brief. *See* Aplee. Supplemental Br. on Compulsion and Use Immunity at 2–6; *see also id.* at 3 n.1 ("Ms. Heil and Mr. Zavaras *alluded* to this argument in their Answer Brief . . . ." (emphasis added)). Specifically, the CDOC argued in its supplemental brief that Mr. Doe had not met the compulsion requirement because his refusal to take the polygraph or provide his sexual history did not increase his sentence. *Id.* at 4. In this regard, the CDOC asserted that the district court erred by relying on *Antelope*, in which the defendant was repeatedly sentenced to additional periods of incarceration for non-compliance with the polygraph requirement. *Id.* at 3–4; *cf.* Aplt. App. at 38 (district court opining that *Antelope*'s reasoning "holds true here: the threat of longer incarceration via the loss of parole eligibility amounted to compulsion"). However, the CDOC's compulsion argument exceeds the scope of our supplemental briefing order, and we decline to entertain its late-blooming compulsion challenge at this time. *See, e.g.*, *United States v. Pablo*, 696 F.3d 1280, 1299 n.21 (10th Cir. 2012); *United States v. Bader*, 678 F.3d 858, 894 (10th Cir.), *cert. denied*, --- U.S. ---, 133 S. Ct. 355 (2012). We have not had occasion to definitively resolve this precise compulsion question, *see Gwinn v. Awmiller*, 354 F.3d 1211, 1227 n.9 (10th Cir. 2004), and we need not do so here. We adhere to our view that the CDOC has conceded this issue for purposes of this proceeding. *See, e.g.*, *First Interstate Bank of Nev., N.A. v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir. 1988). However, given that we ultimately affirm the district court's judgment, the CDOC is in no way prejudiced by this determination.

To assist the lower courts in making the reasonableness determination, the [*Turner*] Court identified the following factors: (1) whether a rational connection exists between the prison policy [or] regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007) (footnote omitted) (quoting *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)); *see Turner*, 482 U.S. at 89–90.

After conducting an assessment of each of these factors, the district court concluded that, although the CDOC's policies violated Mr. Doe's Fifth Amendment rights, the policies were nonetheless valid because they were reasonably related to legitimate penological interests. Regarding Mr. Doe's substantive due process claim, the district court first rejected Mr. Doe's argument that "he has been denied a liberty interest under the Due Process Clause by having sex offender treatment withheld." Aplt. App. at 44. Alternatively, the court ruled that, "even if [Mr. Doe] had sufficiently demonstrated a liberty interest, he must still overcome the *Turner* balancing test," and, referencing its resolution of his Fifth Amendment claim, the court "reject[ed] Doe's argument that he satisfied the *Turner* test." *Id.* at 45.

**2**

9

On appeal, Mr. Doe claims that (1) the district court erred with respect to his Fifth Amendment claim by conducting a full-blown assessment of the *Turner* factors at the motion to dismiss stage, and alternatively, his pleadings were sufficient to satisfy the *Turner* factors; and (2) the district court erred by dismissing his substantive due process claim by declining to recognize a liberty interest in sex-offender treatment.[5]

We conclude that Mr. Doe cannot prevail on appeal and affirm the district court's judgment, albeit on somewhat different grounds. "We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011) (quoting *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011)) (internal quotation marks omitted), *cert. denied*, --- U.S. ---, 132 S. Ct. 2400 (2012).

In *Al-Owhali v. Holder*, we stated:

> Analysis of the four *Turner* factors is necessary at the summary judgment stage. But in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is "reasonably related to a legitimate penological interest." Thus, while it is critical that a complaint address *Turner*'s core holding, the four *Turner* factors need not be part of the analysis at the pleading stage.

---

[5] Mr. Doe has clarified on appeal that he intended to assert Claims One and Three of his amended complaint together as one substantive due process claim. The CDOC does not object to this construction of Mr. Doe's claims. Accordingly, we consider the factual averments of Claims One and Three together as comprising a single substantive due process claim.

10

687 F.3d 1236, 1240 (10th Cir. 2012) (citations omitted) (quoting *Gee*, 627 F.3d at 1187).

In other words, "an analysis of the *Turner* factors is unnecessary at the pleading stage."

*Id.* at 1240 n.2. We noted that, "[a]mong these factors, the first is the most important . . .

[because] it is 'not simply a consideration to be weighed but rather an essential

requirement.'" *Id.* at 1240 (quoting *Boles*, 486 F.3d at 1181). More specifically, in *Al-

Owhali*, we observed:

> Taken together, *Iqbal* and *Turner* require an inmate to "plead facts from
> which a plausible inference can be drawn that the action was not
> reasonably related to a legitimate penological interest." "This is not to
> say that [Al–Owhali] must identify every potential legitimate interest
> and plead against it." However, he is required to "recite[ ] facts that
> might well be unnecessary in other contexts" to surmount a motion to
> dismiss under Fed. R. Civ. P. 12(b)(6).

*Id.* (alterations in original) (quoting *Gee*, 627 F.3d at 1185, 1188).

Even if we were to assume that the district court's decision to engage in a

comprehensive *Turner* analysis at the Rule 12(b)(6) pleading phase was ill-advised or

(worse) error,[6] Mr. Doe could not prevail here. Based upon our careful review of his

amended complaint's averments, we conclude that he has not sufficiently addressed the

essential, first factor of *Turner*—*viz.*, he has not pleaded sufficient facts that would permit

---

[6] We recognize that in *Hall v. Bellmon*, 935 F.2d 1106, 1114 (10th Cir. 1991), we reviewed a district court's Rule 12(b)(6) analysis that appeared to take into account all four of the *Turner* factors. However, the propriety of the district court's methodology was not at issue in *Hall*; consequently, we do not interpret *Hall* as resolving the question of whether such a comprehensive analysis at the pleading stage (at least in certain circumstances) could constitute error. We need not determine that question here either.

11

a court to plausibly infer that the CDOC's policy concerning reentry into the sex-offender treatment program was *not* reasonably related to a legitimate penological interest. As a consequence, his Fifth Amendment claim is fatally flawed.

As for his substantive due process claim, assuming that he can properly proceed on such a claim,[7] like the district court, we conclude that Mr. Doe cannot prevail. Specifically, we conclude that Mr. Doe has not pleaded sufficient facts in his amended complaint to establish a constitutionally protected liberty interest in continued sex-offender treatment. And, even if he had done so, Mr. Doe's factual averments fall far short of raising a plausible inference that the CDOC's policy pertaining to his reentry into the sex-offender treatment program exhibits conscience-shocking deliberate indifference. For these reasons, the district court correctly dismissed his substantive due process claim.

**B**

We first consider the sufficiency of Mr. Doe's pleadings with respect to his Fifth

---

[7]     The Supreme Court "held in *Graham v. Connor*, [490 U.S. 386 (1989)], that '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (second alteration in original) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality) (discussing *Graham*)). The government has not contended here that Mr. Doe cannot proceed on his separate substantive due process claim because the Fifth Amendment "covers" the specific CDOC conduct at issue in that claim. Accordingly, we are content to assume without deciding that Mr. Doe may proceed on a substantive due process claim. In other words, we have no occasion to determine whether "*Graham*'s more-specific-provision rule" constitutes a "bar" to Mr. Doe's substantive due process claim. *Lewis*, 523 U.S. at 844.

12

Amendment claim, and then turn to his Fourteenth Amendment substantive due process claim.

## 1

Mr. Doe claims that the CDOC violated his Fifth Amendment right against self-incrimination by requiring him to take a polygraph examination and to provide his full sexual history before permitting him to reenter the program. As noted above, context matters, and we must assess the sufficiency of the averments of Mr. Doe's amended complaint through the prism of the prison context. "In addition to the pleading burden imposed by *Iqbal*, inmates face additional hurdles when challenging a prison regulation as unreasonable" because a regulation impinging on inmates' constitutional rights is nonetheless valid if reasonably related to legitimate penological interests. *Al-Owhali*, 687 F.3d at 1240.

Mr. Doe argues that the allegations in his complaint were sufficient to survive a Rule 12(b)(6) motion. In particular, he identifies his *Turner*-related allegations as the following: "the [CDOC's] policies are not reasonably related to legitimate penological interests," "there are no alternative means . . . [for him] to exercise his right to or obtain state-mandated sex offender treatment," "there is not [sic] significant negative effect on fellow inmates or on prison officials," "[n]o assurance of immunity has been provided," and "he could have received immunity from prosecution by immunizing his statements (not necessarily any and all future prosecutions)." Aplt. Opening Br. at 16 (alterations in

13

original) (quoting Aplt. App. at 15–16, 26–27 (Resp. to Mot. to Dismiss, filed May 19, 2010)) (internal quotation marks omitted).

These allegations are deficient under *Iqbal* and *Turner*. It is Mr. Doe's "burden to demonstrate that there is no legitimate, rational basis," *Al-Owhali*, 687 F.3d at 1241, for the CDOC's policy; yet nothing in his amended complaint speaks to the policy's underlying rationale—specifically, the CDOC's contention that its legitimate penological interest in the rehabilitation of sex offenders before their release on parole is furthered by requiring them, without regard to their Fifth Amendment stake in avoiding self-incrimination, to submit to a polygraph and admit their full sexual history. *Cf.* Colo. Rev. Stat. § 18-1.3-1001 ("The general assembly therefore declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state.").

To be sure, our decision in *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002), suggests that Mr. Doe's undertaking in this area would be no small task. In *Searcy*, in addressing a First Amendment claim, we stated, "The state's interest in rehabilitating sex offenders is a valid one, and the requirement for admission of responsibility is considered a legitimate part of the rehabilitative process." 299 F.3d at 1228; *see also McKune v. Lile*, 536 U.S. 24, 33 (2002) ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. States thus have a vital interest in rehabilitating convicted sex offenders.

14

Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism. An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct." (citations omitted)). However, at the Rule 12(b)(6) pleading phase, Mr. Doe "was not required to substantively rebut the government's justifications," *Al-Owhali*, 687 F.3d at 1241; he "simply needed to plead some plausible facts supporting his claim" that there was no reasonable relationship between the CDOC's policy requirements for reentry and the legitimate penological interest in rehabilitation, *id.* Yet, Mr. Doe's bald and conclusory assertion that "the [reentry] policies are not reasonably related to legitimate penological interests," Aplt. App. at 15, is patently insufficient, *see Twombly*, 550 U.S. at 555 (noting that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").[8]

We recognize that, in his amended complaint, Mr. Doe asserts that "the policies violate the state statutory requirement that sex offenders receive sex offender treatment" because the CDOC's policies governing reentry (including the requirement that he admit his past sexual conduct) keep him out of the program and "the logical connection between

---

[8] Mr. Doe's attempt to analogize his case to *Boles* is unavailing. In *Boles*, we held that the warden had identified no legitimate penological interest served by his decision to forbid the plaintiff from wearing his religious garments. 486 F.3d at 1182. Here, the CDOC has identified a legitimate penological interest—ensuring that convicted sex offenders complete a rehabilitative treatment program before being released on parole—and expressly and affirmatively linked the relevant reentry requirements involving disclosure of past sexual conduct to this interest.

the [reentry] policies and rehabilitation is so remote as to render the policies arbitrary and irrational." Aplt. App. at 15. However, these averments, too, are conclusory and devoid of facts that might even begin to satisfy the plausibility standard. In particular, we note that simply raising the unavailability of use immunity, *see id.* at 16 ("No assurance of immunity has been provided to Plaintiff."), is insufficient, especially when the Supreme Court has expressly concluded that a State's refusal to offer immunity in similar circumstances serves legitimate state interests. *See Lile*, 536 U.S. at 34 (noting that the State's "decision not to offer immunity" to participants in its sex-offender treatment program "serves two legitimate state interests," specifically, its interest in helping participants "to accept full responsibility for their past actions" by getting them to "accept the proposition that [their] actions carry consequences," and also "its valid interest in deterrence by keeping open the option to prosecute a particularly dangerous sex offender"). In other words, Mr. Doe has pleaded no facts that would permit us to draw a plausible inference that "the action [i.e., the reentry policy] was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188. Accordingly, we affirm the district court's dismissal of Mr. Doe's Fifth Amendment claim on the ground that the claim fails to meet Rule 12(b)(6)'s pleading standards, as set forth by *Twombly* and *Iqbal*.

2

We now turn to Mr. Doe's Fourteenth Amendment substantive due process claim.

16

Mr. Doe avers that he has a "cognizable liberty interest" in continued participation in state-mandated sex-offender treatment, Aplt. App. at 17, and contends that the CDOC's policies impinge upon his liberty interest in continued treatment. He further asserts that the CDOC has been "deliberately indifferent to this liberty interest," and that it "displayed and continue[s] to display intent to violate, or reckless disregard of . . . the obvious, known risk of serious harm." *Id.* at 18. Therefore, Mr. Doe concludes, the CDOC's "behavior is so egregious, so outrageous that it may fairly be said to shock the contemporary conscience of a federal judge, thus violating [his] Fourteenth Amendment substantive due process liberty interest in continued sex offender treatment." *Id.*

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation omitted) (internal quotation marks omitted). To have a liberty interest that is cognizable under the Due Process Clause, Mr. Doe must show "more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972), *abrogated on other grounds by Siegert v. Gilley*, 500 U.S. 226 (1991), *as recognized by Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1154 (10th Cir. 2001); *see also Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) (an inmate must show a "legitimate claim of entitlement" to a protected substantive interest (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)) (internal quotation marks omitted));

17

*Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993) ("An abstract desire or unilateral hope do[es] not establish a protected [liberty] interest.").

Mr. Doe has relied on *Beebe v. Heil*, 333 F. Supp. 2d 1011 (D. Colo. 2004), for his argument that he has "a cognizable liberty interest [in state-mandated sex-offender treatment] for due process purposes." Aplt. App. at 15 (alteration in original). The district court reasoned, however, that Mr. Doe's reliance on *Beebe* was misplaced because that case involved an inmate's "liberty interest in being afforded due process before being *dismissed from treatment*," *Beebe*, 333 F. Supp. 2d at 1014 (emphasis added), which does not support Mr. Doe's claim to a liberty interest in receiving treatment, while at the same time refusing to comply with the CDOC's policies (more specifically, reentry requirements) regarding the program. The district court therefore "reject[ed] Doe's argument that he ha[d] been denied a liberty interest under the Due Process Clause by having sex offender treatment withheld," having determined that Mr. Doe had not established that he had "a liberty interest in those circumstances." Aplt. App. at 44–45. Finding no indication that Mr. Doe was actually being "kept out" of the treatment program, the district court concluded that Mr. Doe was simply "unwilling to fulfill the requirements for program re-admittance." *Id.* at 45. Consequently, the court found that Mr. Doe had not demonstrated the existence of a cognizable liberty interest in being able to reenter, and continue his participation in, the sex-offender treatment program.[9]

---

[9] Mr. Doe also seeks succor from the Third Circuit's decision in *Leamer v.*
(continued...)

18

We think that the district court's reasoning is persuasive. Viewed through the lens of the CDOC's Rule 12(b)(6) motion, we conclude that Mr. Doe has not pleaded any facts that would permit a court to draw a plausible inference that he had a "legitimate claim of entitlement," *Elliott*, 675 F.3d at 1245, to continued sex-offender treatment. The district court's analysis distinguishing *Beebe*, in our view, is spot-on. Irrespective of whether a

---

[9](...continued)
*Fauver*, 288 F.3d 532 (3d Cir. 2002). However, *Leamer* is distinguishable. As the Third Circuit stressed, the New Jersey statute at issue there was "somewhat unique," *id.* at 538, and seemingly vested in certain prisoners an unqualified right to sex-offender treatment, and plaintiff (one of those prisoners) sued when his prison-imposed custody status rendered him "unable to attend therapy," *id.* at 536. *See id.* at 545 ("[T]he state has created a scheme in which therapy is both mandated and promised, and the Department of Corrections is without discretion to decline the obligation."). By way of contrast, following the district court's logic in discussing *Beebe*, Mr. Doe has not been denied access to the CDOC's sex-offender treatment program, like the *Leamer* prisoner. Rather, by his own conduct in refusing to comply with the generally applicable requirements for readmission, he has locked himself out of the program. Along this same line, insofar as Mr. Doe has lost an opportunity for parole due to his inability to secure readmission to the sex-offender treatment program, the responsibility for this outcome must be placed at his feet. Furthermore, Colorado's statute does not evince that Colorado has extended the same sort of unqualified right to sex-offender treatment to prisoners like Mr. Doe, as New Jersey had in *Leamer*. *Cf. Persechini v. Callaway*, 651 F.3d 802, 807 n.5 (8th Cir. 2011) (distinguishing *Leamer* because of the unqualified obligation that New Jersey's statutory scheme imposed on prison officials to provide sex-offender treatment to inmates). Under Colorado's scheme, inmates like Mr. Doe are "required . . . to undergo [sex-offender] treatment *to the extent appropriate* to such offender." Colo. Rev. Stat. § 16-11.7-105 (emphasis added). The extent to which such treatment is "appropriate" is determined, *inter alia*, "based upon any subsequent recommendations by the department of corrections." *Id.* Moreover, in determining whether a sex offender is eligible for parole the principal concern of the parole board is whether the inmate has "successfully progressed in treatment," *id.* § 18-1.3-1006(1)(a); implicit in the notion of progression is an inmate's satisfaction of program requirements. Here, under the CDOC's policy, those program requirements involved taking a polygraph and revealing one's personal sexual history. Yet, Mr. Doe was not willing to comply with those requirements, and thus he was not readmitted into the program and could not progress in treatment.

19

liberty interest would exist under the circumstance of *Beebe*, there is a very material difference between prison administrators terminating an inmate's participation in a sex-offender treatment program and such administrators refusing an inmate's reentry to the program because he refuses to abide by generally applicable requirements for program participation. "As Judge Friendly put it, 'there is a human difference between losing what one has and not getting what one wants.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 882 (1st Cir. 2010) (quoting Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1296 (1975)).

Furthermore, even if we were to assume that Mr. Doe has pleaded sufficient facts to establish a protected liberty interest in continued sex-offender treatment, we would conclude that he cannot prevail because the averments of his amended complaint fail to show—beyond a bare, formulaic recitation—that "the challenged government action 'shocks the conscience' of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)). The district court reached a related conclusion. Aplt. App. at 45 ("[T]he CDOC policy cannot be said to 'shock the conscience' of federal judges.").

"[T]he ultimate standard for evaluating a substantive due process claim is whether the challenged government action shocks the conscience of federal judges." *Ruiz*, 299 F.3d at 1183 (citation omitted) (internal quotation marks omitted); *see Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). We have held that "[a] high level of

outrageousness is required" to establish a substantive due process violation. *Klen v. City of Loveland*, 661 F.3d 498, 513 (10th Cir. 2011). To assist in our determination of whether a challenged government action is conscience shocking, we look to the following three factors: "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Ruiz*, 299 F.3d at 1184; *see also Uhlrig*, 64 F.3d at 573. "We have noted that ordinary negligence does not shock the conscience, . . . and that even permitting unreasonable risks to continue is not necessarily conscience shocking . . . ." *Ruiz*, 299 F.3d at 1184 (citation omitted). "[T]o satisfy the 'shock the conscience' standard, a plaintiff . . . must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574.

In reaching our conclusion here, we are mindful of our earlier observations in *Gee*: "Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison. Consequently, a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts." 627 F.3d at 1185. Furthermore, we are cognizant that prison officials must be accorded considerable deference in establishing policies for the operation of their correctional institutions in furtherance of legitimate objectives, such as public safety and inmate rehabilitation. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a

21

significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."); *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) ("We have recognized . . . that these [constitutional] rights [of inmates] must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." (quoting *Turner*, 428 U.S. at 85)); *Hughes v. Rowe*, 449 U.S. 5, 20 (1980) ("This Court has also repeatedly recognized that the judiciary, 'ill-equipped' to deal with 'complex and difficult' problems of running a prison, must accord the decisions of prison officials great deference." (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977))); *Wirsching v. Colorado*, 360 F.3d 1191, 1200 (10th Cir. 2004) (noting that plaintiff's "arguments ignore the substantial deference we must accord 'to the professional judgment of prison administrators'" (quoting *Overton*, 539 U.S. at 132)); *see also Ruiz*, 299 F.3d at 1184 (noting that, in assessing whether governmental conduct shocks the judicial conscience, courts should consider "the need for deference to local policymaking bodies in making decisions impacting public safety").

It is true, as Mr. Doe suggests, that where governmental actors, including prison administrators, have time for reflection and are not operating under exigent, pressurized circumstances—such as exist during a prison riot or a police car chase—they may be subjected to substantive due process liability for operating with deliberate indifference, rather than a more culpable mental state like an intent to harm. *See Lewis*, 523 U.S. at 853 ("[L]iability for *deliberate indifference* to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance

22

for repeated reflection, largely uncomplicated by the pulls of competing obligations."

(emphasis added)); *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1102 (10th

Cir. 2009) (noting that "[a]s the very term 'deliberate indifference' implies, the standard

is sensibly employed only when actual deliberation is practical" (quoting *Lewis*, 523 U.S.

at 851) (internal quotation marks omitted)); *see also Perez v. Unified Gov't of Wyandotte*

*Cnty.*, 432 F.3d 1163, 1166 (10th Cir. 2005) ("In *Lewis*, the Supreme Court clarified how

courts should determine whether government action shocks the conscience."); *Leamer*,

288 F.3d at 548 ("The assessment of what constitutes conscience-shocking behavior

differs according to the factual setting.  The Supreme Court has noted that, in the prison

setting, the opportunity for deliberation may make the test more easily satisfied than in,

for example, the setting of a police chase.  In contrast, under rapidly evolving situations

requiring immediate responses from personnel, such as the high-speed chase that was at

issue in *Lewis*, there can be no liability without an 'intent to harm suspects physically or

to worsen their legal plight.'" (quoting *Lewis*, 523 U.S. at 854)).

However, deliberate indifference in the Fourteenth Amendment due process

context is, itself, a stringent standard.  *See Radecki v. Barela*, 146 F.3d 1227, 1231 (10th

Cir. 1998) (noting that *Lewis* "specifically recognizes that in the middle range of the

culpability spectrum, where the conduct is more than negligent but less than intentional,

there may be some conduct that is egregious enough to state a substantive due process

claim"); *see also Gonzalez-Fuentes*, 607 F.3d at 883 ("Even when the government is held

to the less demanding deliberate indifference standard, we think the presence of interests

on both sides of the scale reduces the likelihood of unconstitutionality. The Supreme Court's hypothetical archetype for a successful deliberate indifference claim is an individual taken into state custody who is then denied basic human needs such as food and medical care."). And "not every instance of deliberate indifference may fairly be 'condemned as conscience shocking.'" *Smith v. District of Columbia*, 413 F.3d 86, 107 n.* (D.C. Cir. 2005) (quoting *Lewis*, 523 U.S. at 850); *see Lewis*, 523 U.S. at 850 ("Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."); *Graves v. Thomas*, 450 F.3d 1215, 1222 (10th Cir. 2006) (noting that "a culpable mental state, alone, is insufficient to establish a violation of substantive due process"); *see also Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009) ("In attempting to divine a meaningful standard from the general concept of conscience-shocking deliberate indifference, we bear in mind that the Supreme Court has made it clear that executive action which violates the Fourteenth Amendment's substantive due process provision must meet a very high degree of culpability.").

Thus, to survive a challenge at the Rule 12(b)(6) pleading phase, a plaintiff must have pleaded sufficient facts in his complaint from which a court may draw a plausible inference that a defendant acted with conscience-shocking deliberate indifference. In that regard, a factual showing that a defendant prison administrator imposed reasonable, generally applicable conditions on the admission of inmates into a therapeutic program is

24

very unlikely to evince the requisite lack of care to rise to the level of conscience-shocking deliberate indifference. *Cf. Gonzalez-Fuentes*, 607 F.3d at 884 ("We conclude that given the circumstances here, the government has advanced a legitimate interest to justify its actions. The decision to reimprison the appellees following their time participating in the [non-custodial electronic supervision program] does not in itself shock the conscience and therefore does not infringe substantive due process."); *Green*, 574 F.3d at 1303 ("[W]e have also held that '[w]hile length of deliberation may be a factor in a conscience-shocking analysis, it cannot replace the over-arching need for deference to local policy-making bodies.'" (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1041 n.1 (10th Cir. 2006))); *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 540 (6th Cir. 2008) ("Where the substantive due process claim arises out of a governmental actor's attempt to discharge duties which it is required by law or public necessity to undertake, courts are particularly unlikely to find the action arbitrary, even if the actor was imprudent in choosing one legitimate goal over another.").

Mr. Doe contends that his amended complaint alleged the necessary factors to establish "shocking to the conscience actions," Aplt. Opening Br. at 22, including "disregard of the obvious, known risk of serious harm," "firsthand knowledge of the liberty interest at stake and the harm involved when sex offender treatment is wrongfully withheld," the fact that "[i]n the prison setting the substantive due process threshold is more easily met" than in other kinds of civil rights lawsuits, and the fact that "opportunity for deliberation is present in this case," *id.* (quoting Aplt. App. at 18–19) (internal

25

quotation marks omitted).  However, we conclude that the averments of Mr. Doe's amended complaint do not rise above a conclusory level: for example, he baldly asserts that "[t]his substantive due process threshold has been met because [the CDOC] . . . displayed and continue[s] to display intent to violate, or reckless disregard of, the statutory requirement of sex offender treatment, and disregard of the obvious, known risk of serious harm to [Mr. Doe]."  Aplt. App. at 18.  However, he does not back this statement up with concrete factual averments that "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (quoting *Uhlrig*, 64 F.3d at 574) (internal quotation marks omitted).

Furthermore, as discussed in the context of Mr. Doe's Fifth Amendment claim, the allegations in his complaint do not permit us to draw a plausible inference that the CDOC's policies regarding reentry into the sex-offender treatment program were not reasonably related to a legitimate penological interest in rehabilitation.  This solidifies our view that his averments have failed to demonstrate that the CDOC has engaged in conduct capable of shocking the judicial conscience.  At a minimum, we would be disinclined to conclude that, where a prison policy is reasonably related to a legitimate penological interest, that something about the prison administrator's promulgation and enforcement of that policy could result in a shock to the judicial conscience, and Mr. Doe's conclusory pleading averments do nothing to cause us to adopt a different perspective regarding the CDOC's policy and its implementation of it in this case.  In

26

sum, Mr. Doe's substantive due process claim fails because he has not pleaded any facts to support a plausible inference that the CDOC's policy regarding reentry into the sex-offender treatment program is so outrageous as to be conscience shocking.

**3**

"The general rule is, of course, that the grant or denial of leave to amend is within the discretion of the trial court and will not be disturbed, absent an abuse of that discretion." *Triplett v. LeFlore Cnty.*, 712 F.2d 444, 446 (10th Cir. 1983). We pause to note that this is not an appropriate case to disturb a district court's dismissal with prejudice because it failed sua sponte to grant plaintiff an opportunity to amend his complaint. We took that path in *Gee*, but we stressed that the plaintiff was proceeding pro se:

> The district court dismissed the entire complaint with prejudice. But "dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." . . . There is no indication that the district court considered allowing Mr. Gee to amend his complaint with regard to any of his allegations.

627 F.3d at 1195 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).

Unlike in *Gee*, from the start of this litigation, Mr. Doe has been represented by counsel. After filing his one amended complaint as of right—or, in the language of the applicable federal rule, "as a matter of course," Fed. R. Civ. P. 15(a)(1)—Mr. Doe never sought leave to amend his complaint before the district court, despite the widely understood and routinely enforced principle that such leave shall be freely given "when justice so

27

requires," *id.* Rule 15(a)(2); *see*, *e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that "this mandate" of freely granting leave to amend "is to be heeded"); *accord Triplett*, 712 F.2d at 446; *see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits."). Indeed, even after the district court granted the CDOC's motion to dismiss, although Mr. Doe was authorized to do so, *see, e.g.*, *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989); *Triplett*, 712 F.2d at 445–46, he never sought leave to amend in connection with his efforts to secure reconsideration of the court's dismissal order. Indeed, he has not even sought that relief before us.

"We do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994); *accord Calderon*, 181 F.3d at 1187; *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required sua sponte to grant leave to amend prior to making its decision [to dismiss]."). At least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend. *See Calderon*, 181 F.3d at 1186–87 ("[W]e conclude that a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed

28

amendment before the court is required to recognize that a motion for leave to amend is before it."); *Glenn*, 868 F.2d at 371 ("Under the facts of this case, we hold that Appellant did not move the court for leave to amend the complaint and therefore the district judge committed no error in not ruling thereon."); *see also United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("For several reasons, the district court did not abuse its discretion in not allowing Willard to amend his complaint for a third time.  First, Willard did not expressly request with particularity the opportunity to amend his complaint for the third time."); *Long v. Satz*, 181 F.3d 1275, 1279–80 (11th Cir. 1999) (per curiam) ("The plaintiff had ample time to file a motion for leave to amend but failed to do so.  Failure to properly request leave to amend, when she had adequate opportunity and time to do so, precludes the plaintiff's argument on appeal that the district court abused its discretion by denying her leave to amend her complaint. We conclude that the district court did not abuse its discretion in denying plaintiff leave to amend her complaint.").   Mr. Doe took advantage of "none of [his] legal options . . . and this court will not protect [him] from [his] own inaction."  *Glenn*, 868 F.2d at 371; *see Willard*, 336 F.3d at 387 ("A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals."). Accordingly, we will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give Mr. Doe —who was represented by counsel—an opportunity to file an amended complaint.

**IV**

29

Based on the foregoing discussion, we **AFFIRM** the district court's dismissal order and resulting judgment.

Entered for the Court

JEROME A. HOLMES
Circuit Judge