**Rose RUIZ, Plaintiff–Appellant,**

v.

**Barbara McDONNELL, Executive Director of the Colorado Department of Human Services; Colorado Department of Human Services; Renee L. Gallegos; Charles Gallegos; Victoria Gallegos; Leroy Gallegos; and John Does numbers one through four, Defendants–Appellees.**

**No. 01–1010.**

United States Court of Appeals, Tenth Circuit.

Aug. 8, 2002.

---

Jonathan S. Willett of Willett & Mestas, LLC, Denver, CO, appearing for Plaintiff–Appellant.

Friedrick C. Haines, Assistant Attorney General, Denver, CO, for Defendants–Appellees Barbara McDonnell and Colorado Department of Human Services, (Ken Salazar, Attorney General, Denver, CO, for Defendants–Appellees Barbara McDonnell and Colorado Department of Human Services, and John Barry, Patrick M. Groom, and Timothy V. Clancy of Witwer, Oldenburg, Barry & Bedingfield, LLP, Greeley, CO, for Defendants–Appellees Victoria Gallegos, and Leroy Gallegos, with him on the brief).

Before HENRY, Circuit Judge, HOLLOWAY, Senior Circuit Judge, and VANBEBBER, Senior District Judge.*

VANBEBBER, Senior District Judge.

Plaintiff–Appellant, Rose Ruiz, filed this action alleging violations of her and her deceased son's Fourteenth Amendment substantive due process rights under 42 U.S.C. § 1983 against Defendants–Appellees Colorado Department of Human Services ("CDHS") and Barbara McDonnell, Executive Director of CDHS (collectively referred to as the "State Defendants"), and John Does numbers one through four. Ms. Ruiz also brought ancillary state law tort and contract claims against Defendants–Appellees Renee Gallegos, Charles Gallegos, Victoria Gallegos and Leroy Gallegos (collectively referred to as the "Private Defendants"). The State Defendants moved to dismiss Ms. Ruiz's claims against them pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The district court granted the motion pursuant to Rule 12(b)(6) and, declining to exercise supplemental jurisdiction over Ms. Ruiz's remaining state law claims, dismissed without prejudice all Defendants except Renee Gallegos. The district court subsequently entered default judgment against Renee Gallegos pursuant to Fed.R.Civ.P. 55. Ms. Ruiz appeals the district court's order granting the State Defendants' motion to dismiss. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Ms. Ruiz relies on the following facts alleged in her first amended complaint and proposed second amended complaint.[1] In

---

* The Honorable G. Thomas VanBebber, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. When it granted the State Defendants' motion to dismiss, the district court denied as moot a motion for leave to file a second amended complaint that Ms. Ruiz submitted several months prior to the district court's decision. The proposed second amended complaint sought to: (1) add as defendants the Weld County Department of Public Health and Environment ("WCDPHE") and Dr. John Wallace, Executive Director of WCDPHE; (2) add allegations that it was a practice and custom of the CDHS and the WCDPHE not to investigate child care license applicants and holders; and (3) supplement a premises liability claim against Charles, Victoria and Leroy Gallegos. Ms. Ruiz contends that the district court should have considered the proposed second amended complaint's allegations before it granted the State Defendants' motion to dismiss, and she urges us to consider those allegations on appeal. She has not complied with Fed. R.App. P. 24(a)(5). The statement of the issues presented for review in Ms. Ruiz's opening brief does not specifically raise the district court's denial of the motion seeking leave to file the second amended complaint as an issue. Nevertheless, the issue is discussed elsewhere in Ms. Ruiz's opening brief. As a result, we have considered the

August 1998, Ms. Ruiz, a single working mother receiving federal assistance to cover day care expenses, began taking her infant son, J.R., to the Tender Heart Day Care ("Tender Heart") in Greeley, Colorado. Tender Heart was a private, licensed day care service operated by Renee Gallegos in the home that she shared with her husband, Charles Gallegos, and which was owned by Charles Gallegos's parents, Leroy and Victoria Gallegos. On October 17, 1998, J.R. suffered severe head injuries consistent with violent shaking while in the care of Tender Heart. J.R. died from his injuries on November 10, 1998. Renee Gallegos later pleaded guilty to felony child abuse charges in connection with J.R.'s death and is now imprisoned for that crime.

Tender Heart, which received federal funding for its services, was licensed as a "Family Child Care Home" by the CDHS, whose Executive Director at the relevant time was Ms. McDonnell. As part of its licensing process, the CDHS was required to conduct an investigation into Renee and Charles Gallegos's fitness as child care providers and to verify that Tender Heart carried valid public liability insurance. Ms. Ruiz alleges in her amended and proposed second amended complaints that the CDHS failed in both regards by neglecting to uncover an extensive history of domestic violence between Renee and Charles Gallegos that Ms. Ruiz contends was available through a simple search of court records, and by failing to discover that Tender

Heart did not carry the proper insurance. Ms. Ruiz alleges in her proposed second amended complaint that it was a practice and custom of the agents of the CDHS to neglect conducting the requisite background and insurance checks, and that Ms. McDonnell failed to stop or correct that practice. Both the amended and proposed second amended complaints allege that the Gallegoses' history of domestic violence and Tender Heart's lack of valid public liability insurance were grounds upon which the CDHS should have denied licensing to Tender Heart.

On May 8, 2000, Ms. Ruiz commenced this suit against the State Defendants, the Private Defendants, the Weld County Department of Human Services and its Executive Director, Walter Speckman (collectively referred to as the "County Defendants"), and John Does numbers one through four, all of whom were alleged to be unknown employees of the State and County Defendants.[2] Ms. Ruiz based her § 1983 claim on the failure to deny a family child care home license to Tender Heart. Specifically, Ms. Ruiz alleged that the state and federal statutes and regulations governing child care licensing "embody a substantive constitutional right to be free from the deprivation of life and liberty without due process of law under the Fourteenth Amendment of the United States Constitution" and that the licensure of Tender Heart after an inadequate, or nonexis-

proposed second amended complaint's allegations for purposes of thoroughly reviewing Ms. Ruiz's claims on appeal, but we conclude that the proposed amendments do not affect our decision in this case.

2. Ms. Ruiz later substituted the WCDPHE and Dr. Wallace, its Executive Director, as the named County Defendants, and added Cheryl Estrich, an employee of the CDHS, as an additional State Defendant. The County Defendants and Ms. Estrich were either dis-

missed by the district court or not served with process. They are not parties to this appeal. John Does numbers one through four remain unknown and unserved. Despite this, we note that Ms. Ruiz's § 1983 allegations against these Defendants were in all relevant respects identical to the allegations against the State Defendants. Thus, although the balance of this opinion refers only to Ms. Ruiz's allegations against the State Defendants, the allegations applied equally to these other Defendants as well.

tent, investigation into the facility ultimately deprived her and J.R. of those rights.

On June 23, 2000, the State Defendants filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6), arguing that: (1) the CDHS was entitled to immunity under the Eleventh Amendment to the United States Constitution; (2) neither the CDHS nor Ms. McDonnell, acting in her official capacity, were "persons" within the meaning of § 1983; (3) Ms. McDonnell, acting in her individual capacity, was entitled to qualified immunity; and (4) Ms. Ruiz failed to allege a constitutional violation by the State Defendants because she could not state facts sufficient to satisfy either the "special relationship" or "danger creation" exceptions to the general rule that state actors are not liable for the violence of private individuals under the Fourteenth Amendment's Due Process Clause.

Ms. Ruiz conceded in her response to the motion to dismiss and at an October 19, 2000, hearing on the motion that her claims against the CDHS and Ms. McDonnell, acting in her official capacity, were improper under § 1983. On December 4, 2000, the district court entered an order dismissing Ms. Ruiz's § 1983 claim against the State Defendants pursuant to Fed. R.Civ.P. 12(b)(6) based on the State Defendants' argument that Ms. Ruiz failed to allege facts sufficient to satisfy either exception to the general rule that state actors cannot be held liable for the violence of private individuals under the Due Process Clause. Having disposed of the only claim over which the district court had original jurisdiction, the court declined to exercise supplemental jurisdiction over Ms. Ruiz's remaining state law claims. As a result, the district court dismissed all Defendants from the case except for Renee Gallegos, against whom the court entered default judgment on March 21, 2001.

Ms. Ruiz now appeals the district court's order of December 4, 2000, arguing that the district court erred when it concluded that Ms. Ruiz's amended complaint failed to sufficiently allege a "danger creation" cause of action under § 1983.

## II. DISCUSSION

### A. Appellate Jurisdiction

As an initial matter, Defendants–Appellees argue that we lack jurisdiction over this appeal because Ms. Ruiz allegedly failed to properly file her notice of appeal with the district court. Specifically, Defendants Appellees contend that Ms. Ruiz's notice of appeal was premature because the district court had not yet adjudicated all claims against all Defendants when Ms. Ruiz filed the notice. According to Defendants Appellees, Ms. Ruiz should have filed a second, timely notice of appeal after the district court entered final judgment. We disagree.

We directly addressed and rejected the same argument as made by Defendants–Appellees in *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641 (10th Cir.1988) (en banc). In *Lewis*, we held that a notice of appeal filed before the district court disposes of all claims is nevertheless effective if the appellant obtains either certification pursuant to Fed.R.Civ.P. 54(b) or final adjudication before the court of appeals considers the case on its merits. 850 F.2d at 645–46. In such a situation, the premature notice simply ripens on the date of certification or final adjudication, and the filing of a second notice of appeal is unnecessary. *Id.* at 645.

Here, the district court issued an order on December 4, 2000, dismissing without prejudice all Defendants except for Renee Gallegos. Ms. Ruiz filed her notice of appeal on January 5, 2001. Because the district court had not yet adjudi-

cated all claims against all Defendants, we ordered counsel for Ms. Ruiz to serve and file with us either a district court order granting certification or a district court order explicitly adjudicating the remaining claim against Renee Gallegos. The district court entered default judgment against Renee Gallegos on March 21, 2001, and Ms. Ruiz's counsel provided us with the district court's order to that effect on March 28, 2001. Ms. Ruiz's notice of appeal, filed on January 5, 2001, ripened on March 21, 2001, with the district court's entry of default judgment against Renee Gallegos. Ms. Ruiz was not required to file a second notice of appeal. As a result, we conclude that we have appellate jurisdiction in this case pursuant to 28 U.S.C. § 1291.

### B. Eleventh Amendment Immunity

██ Defendants Appellees next argue that the CDHS and Ms. McDonnell, to the extent that a claim has been asserted against her in her "official capacity," are entitled to Eleventh Amendment immunity. Although the State Defendants raised this argument in their motion to dismiss, the district court declined to address it. Because an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court, we address that issue before turning to the merits of the case. *Thompson v. Colorado*, 278 F.3d 1020, 1023–24 (10th Cir.2001) (citations omitted).

██ The State Defendants raised the Eleventh Amendment immunity defense pursuant to Fed.R.Civ.P. 12(b)(1). Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citation omitted). Here, the State

Defendants' Rule 12(b)(1) motion constituted a facial attack on the allegations of subject matter jurisdiction contained in Ms. Ruiz's amended complaint. Accordingly, we presume all of the allegations contained in the amended complaint to be true. *Id.* at 1002 (citation omitted).

██ With certain limited exceptions, the Eleventh Amendment prohibits a citizen from filing suit against a state in federal court. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1231–32 (10th Cir.1999) (citation omitted). To assert Eleventh Amendment immunity, a defendant must qualify as a state or an "arm" of a state. *Id.* at 1232 (citation omitted). Here, there exists no dispute between the parties that the CDHS qualifies as an "arm" of the state of Colorado. Ruiz alleges in her amended complaints that "[t]he Colorado State Department of Human Services is a part of the Colorado State Government responsible for administration of Federal programs to provide family and child care services to the needy."

██ In addition, to the extent that a claim has been asserted against Ms. McDonnell in her "official capacity," she may also assert Eleventh Amendment immunity as an "arm" of the state in that she assumes the identity of the CDHS. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citations omitted) (explaining that a state official sued in his or her "official capacity" is generally entitled to assert the same immunities as the governmental entity for which he or she works). We recognize, of course, that a state official like Ms. McDonnell might not be protected by Eleventh Amendment immunity in a case where the plaintiff seeks prospective injunctive relief as a remedy. *Thompson*, 278 F.3d at 1024 (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct.

441, 52 L.Ed. 714 (1908)). Because Ms. Ruiz seeks no such relief in this case, the exception does not apply.

We have recognized two primary circumstances in which a citizen may sue a state without offending Eleventh Amendment immunity. Congress may abrogate a state's Eleventh Amendment immunity. *Thompson*, 278 F.3d at 1025 (citing *Seminole Tribe*, 517 U.S. at 55). A state may also waive its Eleventh Amendment immunity and consent to be sued. *Id.* at 1024 (citing *Idaho v. Coeur d'Alene*, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). Neither exception applies in this case.

First, the United States Supreme Court has previously held that Congress did not abrogate states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (citation omitted). Second, Ruiz neither alleges in her amended complaint, nor is there any other indication in the record, that the state of Colorado waived its Eleventh Amendment immunity in this case. For those reasons, we conclude that the district court lacked subject matter jurisdiction over Ms. Ruiz's § 1983 claim with respect to the CDHS and Ms. McDonnell, acting in her "official capacity." Accordingly, we affirm the district court's dismissal of those parties on that ground.

### C. Section 1983 Claim

Finally, Defendants–Appellees argue that: (1) Ms. Ruiz's § 1983 claim is barred with respect to the CDHS and Ms. McDonnell, acting in her "official capaci-

ty," because neither qualifies as a "person" within the meaning of § 1983; and (2) Ms. Ruiz's amended complaints fail to properly allege a "danger creation" cause of action against the State Defendants under § 1983. The State Defendants advanced both arguments in their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

We review *de novo* the district court's dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir.2001) (citation omitted). A Rule 12(b)(6) motion to dismiss may be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling her to relief under her theory of recovery. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984) (citation omitted). The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed. *Id.* (citation omitted). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[3]

### 1. "Persons" Under § 1983

In *Will v. Michigan Department of State Police*, the United States

---

**3.** We note Ms. Ruiz's argument that our recent decision in *Currier v. Doran*, 242 F.3d 905, 916–17 (10th Cir.2001), rejects the application of a heightened pleading standard to § 1983 cases in which qualified immunity is raised as a defense. Although the district court did not reach the issue of qualified immunity in its decision, and we see no evidence that it applied a heightened pleading standard in evaluating Ms. Ruiz's claim, we agree that a heightened standard is not appropriate here. We therefore apply the traditional Rule 12(b)(6) standards enunciated above in our *de novo* review of Ms. Ruiz's claim.

Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Although the district court declined to address the State Defendants' argument that the CDHS and Ms. McDonnell, acting in her "official capacity," did not qualify as "persons" under § 1983, "we may affirm on any grounds supported by the record." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir.1994) (citation omitted). Because the Supreme Court's precedent in *Will* mandates that we conclude that neither the CDHS nor Ms. McDonnell, acting in her "official capacity," qualify as "persons" under § 1983, we affirm the district court's dismissal of those parties on that ground.

### 2. "Danger Creation" Cause of Action Under § 1983

■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Section 1983, in turn, permits an individual to pursue an action against any person who "under color of any statute, ordinance, regulation, custom, or usage," deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Here, Ms. Ruiz contends that the acts and omissions of the State Defendants in licensing Tender Heart as a family child care home violated constitutional protections of substantive due process when Ms. Ruiz's son, J.R., was injured and ultimately died at the hands of Renee Gallegos.

■ Generally, state actors may only be held liable under § 1983 for their own acts, and not for the violent acts of third parties. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). We have recognized two exceptions to this general rule: (1) the "special relationship" exception; and (2) the "danger creation" exception. *Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir.1998) (quoting *Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 276 (10th Cir.1996)). Under the "special relationship" exception, liability may attach to a state actor for the violence of a third party if the state restrained the plaintiff's personal liberty and that restraint hindered the plaintiff's freedom to act to protect himself from the third party. *Id.* at 1261. Under the "danger creation" exception, a state actor may be held liable for the violent acts of a third party if the state actor "created the danger" that caused the harm. *Id.* at 1262 (citation omitted). The district court in this case analyzed Ms. Ruiz's claim under both exceptions and concluded that Ms. Ruiz failed to state a claim under either. Ms. Ruiz now contends that the district court erred in concluding that she failed to state a claim under the "danger creation" exception.[4]

■ To state a prima facie case under the "danger creation" exception, a plaintiff must show that: (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a

4. Because Ms. Ruiz does not argue that the district court erred by concluding that she failed to state a claim under the "special relationship" exception, we deem that issue waived on appeal. *See Veile v. Martinson*, 258 F.3d 1180, 1183 n. 2 (10th Cir.2001) (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir.1994)).

member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience. *Armijo*, 159 F.3d at 1262–63 (citations omitted). Further, "[t]his state-created danger doctrine 'necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger.'" *Graham v. Indep. Sch. Dist. No. I–89*, 22 F.3d 991, 995 (10th Cir.1994) (citation omitted). Because we find that Ms. Ruiz failed to allege either any pertinent affirmative conduct on the part of the State Defendants or any conduct that "shocks the conscience," we conclude that the district court properly dismissed Ms. Ruiz's § 1983 claim pursuant to Fed. R.Civ.P. 12(b)(6).

▮▮▮▮ First, Ms. Ruiz has alleged no facts in her amended or proposed second amended complaints that demonstrate affirmative conduct on the part of the State Defendants that created or increased the danger to J.R. Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration. *Id.* (quoting *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 733 n. 4 (8th Cir.1993)) (holding that a school district's enrollment of an aggressive student in public school does not constitute the requisite affirmative conduct necessary to maintain a § 1983 claim for injuries inflicted by the student because the risk posed by mere enrollment is indefinite). Moreover, the conduct should be directed at a discrete plaintiff rather than at the public at large. *Mark v. Borough of Hat-*

*boro*, 51 F.3d 1137, 1153 (3d Cir.1995) (holding that the plaintiff, whose home was deliberately burned by a volunteer firefighter, could not maintain a § 1983 claim on the sole basis that the fire department failed to properly screen firefighter applicants because the department's conduct affected the public at large and was not directed at the plaintiff).

Here, the crux of Ms. Ruiz's claim is that J.R. suffered injuries of constitutional proportions because the State Defendants improperly licensed Tender Heart after failing to conduct an investigation into the facility. However, we do not view the mere licensure of Tender Heart as constituting the requisite affirmative conduct necessary to state a viable § 1983 claim. Specifically, the improper licensure did not impose an immediate threat of harm. Rather, it presented a threat of an indefinite range and duration. Moreover, the licensure affected the public at large; it was not aimed at J.R. or Ms. Ruiz directly. Unlike the direct placement of a child into an abusive home, the mere licensure of Tender Heart was not an act directed at J.R. which, in and of itself, placed J.R. in danger. For those reasons, we conclude that Ms. Ruiz has failed to allege any affirmative conduct on the part of the State Defendants that created or increased the danger to J.R.

▮▮▮▮ Second, even if we were to hold that Ms. Ruiz had alleged affirmative conduct on the part of the State Defendants, we cannot conclude that the conduct alleged "shocks the conscience." As noted, the ultimate standard for evaluating a substantive due process claim is whether the challenged government action "shocks the conscience" of federal judges.[5] *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995)

---

5. Ms. Ruiz contends that we should look to whether the State Defendants' conduct "shocks the conscience" of parents, as op-

posed to federal judges. Unfortunately, Ms. Ruiz provides us with no authority that would allow us to deviate from the standard that the

(quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). To assist us in that determination, we look to the following three factors: (1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety. *Id.* (citations omitted). "These factors counsel that application of danger creation as a basis for § 1983 claims is reserved for exceptional circumstances." *Eckert v. Town of Silverthorne,* No. 00–1030, 2001 WL 1152781, at *8, 25 Fed.Appx. 679 (10th Cir. July 9, 2001). We have noted that ordinary negligence does not shock the conscience, *DeAnzona v. City & County of Denver,* 222 F.3d 1229, 1236 (10th Cir. 2000) (citing *DeShaney,* 489 U.S. at 202), and that even permitting unreasonable risks to continue is not necessarily conscience shocking, *Uhlrig,* 64 F.3d at 574 (citing *Collins,* 503 U.S. at 128). Rather, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.*

While we deeply sympathize with Ms. Ruiz in the tragic death of her son, we cannot conclude that the State Defendants' conduct in this case was so "egregious, outrageous or fraught with unreasonable risk" as to "shock the conscience." *See Liebson,* 73 F.3d at 277. Taking all of Ms. Ruiz's allegations as true, as we must, we do not believe that the State Defendants' failure to conduct the requisite background and insurance checks rises above the level of negligence. Because negligent acts are insufficient to sustain a substantive due process claim under § 1983, we conclude that the district court properly granted the State Defendants' motion to dismiss.

In reaching this conclusion, we have considered Ms. Ruiz's argument that we should find the State Defendants' conduct "conscience shocking" because, according to Ms. Ruiz: (1) "there is no remedy in state tort law[ ] for this incident as Tender Heart Day Care satisfied the public insurance requirement with a homeowner[']s policy that did not offer cover[age] for any operation of the day care business;" and (2) the State Defendants' alleged practice of not conducting background and insurance checks is not entitled to judicial deference. We are not persuaded that either of these factors tips the balance in favor of finding the State Defendants' conduct "conscience shocking." First, we note that Tender Heart's failure to carry the proper public liability insurance has no bearing on Ms. Ruiz's ability to file suit against any of the Defendants under state tort law. At most, the Private Defendants' failure to carry the proper insurance affects only the question of who would ultimately be responsible for paying any judgment that Ms. Ruiz might obtain against the Private Defendants.[6] Second, although we agree

---

conduct must "shock the conscience" of federal judges, and given the clear dictate already outlined by this court in previous cases, we will not depart from that standard here.

**6.** Although not argued by Ms. Ruiz on appeal, we recognize that the Colorado Governmental Immunity Act might pose an impediment to Ms. Ruiz pursuing a claim against the State Defendants under state tort law. *See* Colo. Rev.Stat. § 24–10–106 (providing immunity in most cases to "public entities" for "claims for injury which lie in tort or could lie in tort"). Ms. Ruiz would not be barred from pursuing such a claim, however, if she could satisfy any of the six exceptions to the governmental immunity doctrine, *Id.* § 24–10–106(1)(a)(f), or if she could show that any of the State Defendants' employees' acts or omissions in causing her or J.R.'s injuries were "willful or wanton," *Id.* § 24–10–118. Ms. Ruiz chose not to pursue those options in this case. In fact, Ms. Ruiz's counsel specifically admitted at oral argument that, "In terms of accountability, it was Plaintiff's primary desire to, because she felt betrayed by

that the State Defendants' conduct in this case, if true, is not necessarily entitled to judicial deference, we still cannot conclude that the conduct "shocks the conscience."

We have also considered Ms. Ruiz's reliance on *Currier v. Doran*, 242 F.3d 905 (10th Cir.2001), to support her argument that the State Defendants' conduct "shocks the conscience." We believe, however, that the facts of *Currier* are distinguishable from the facts of this case. In *Currier*, the state granted physical, and eventually legal, custody of two young children to the children's father. 242 F.3d at 909–10. Prior to the state granting physical custody to the father, a state social worker assigned to the case became aware of the father's history of financial irresponsibility with respect to the children, including making only eight child support payments in the previous three years. *Id.* at 909. Despite this knowledge, the social worker said nothing to the Children's Court during the hearing at which physical custody was awarded to the father. *Id.* Later, but prior to the father gaining legal custody of the children, the same social worker noticed bruises on the children on at least two occasions while the children were in the physical custody of the father, and was informed on at least three other occasions that the children's father and/or the father's girlfriend were allegedly abusing the children. *Id.* at 909–10, 919. Despite these indications of abuse, the social worker failed to launch any investigation and ultimately, through either his affirmative recommendation or his silence with respect to the indications of abuse, was responsible for the father obtaining legal custody of the children. *Id.* The father later killed one of the children by scalding him with boiling water. *Id.* at 910. Representatives of the children filed suit under

§ 1983, alleging that the social worker violated the children's Fourteenth Amendment substantive due process rights by creating the danger of the harm suffered by the children. *Id.* at 908, 919–20. We held that the plaintiffs had alleged facts sufficient to show that the social worker's conduct "shocked the conscience." *Id.* at 920.

Ms. Ruiz now urges us to construe our holding in *Currier* to mean that "a state actor's failure to adequately investigate a child's private placement by authorizing placement with a person who ultimately harmed the child is actionable and satisfies the shocks the conscience standard." We disagree. Our holding in *Currier* is simply not that far-reaching. The conduct by the social worker in *Currier*, given the father's history of financial irresponsibility with respect to the children and the numerous *specific* indications of abuse of the children by the father and/or his girlfriend, was of a different degree and type of culpability than the State Defendants' alleged failure to conduct background and insurance checks on the family child care home license applicants in this case. The conduct of the State Defendants in this case did not involve the direct placement of a child in the hands of an abuser; it merely involved the licensure of a facility. While we find that the State Defendants' actions might have risen to the level of negligence, we do not consider them to be "conscience-shocking."

Defendants–Appellees do not request that we consider the State Defendants' qualified immunity argument on appeal, and because we have already concluded that Ms. Ruiz's § 1983 claim fails to assert a violation of federal constitutional law, we agree that we need not do so. *See id.* at

---

the state licensing scheme, to proceed under the federal civil rights statute." Thus, we cannot conclude that Ms. Ruiz had no remedy

under state tort law against the State Defendants.

917 (citations omitted) (stating that before the court examines whether a defendant is entitled to qualified immunity, it must first determine whether the plaintiff has asserted a violation of federal law).

AFFIRMED.