FILED
United States Court of Appeals
Tenth Circuit

August 25, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LYNN D. BECKER,

     Plaintiff Counterclaim Defendant - Appellee,

v.

UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION, a federally chartered corporation; UINTAH AND OURAY TRIBAL BUSINESS COMMITTEE; UTE ENERGY HOLDINGS, LLC, a Delaware LLC,

     Defendant Counterclaimants Third-Party Plaintiffs - Appellants,

v.

JUDGE BARRY G. LAWRENCE,

     Third-Party Defendant - Appellee.

No. 16-4175

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:16-CV-00958-CW)**
_____

Jeffrey S. Rasmussen (Frances C. Bassett, Thomas W. Fredericks, Jeffrey J. Patterson, and Thomasina Real Bird, with him on the briefs), Fredericks Peebles & Morgan LLP, Louisville, Colorado, for Ute Indian Tribe of the Uintah and Ouray Reservation, Uintah and Ouray Tribal Business Committee, Ute Energy Holdings, LLC, Defendant Counterclaimants Third-Party Plaintiffs-Appellants.

David K. Isom, Isom Law Firm, PLLC, Salt Lake City, Utah, for Plaintiff, Counterclaim Defendant-Appellee, Lynn D. Becker.

Brent M. Johnson and Keisa L. Williams, Utah Administrative Office of the Courts, Salt Lake City, Utah, for Third-Party Defendant-Appellee, Judge Barry G. Lawrence.

———————————————

Before **HARTZ** and **EBEL**, Circuit Judges.[*]

———————————————

**HARTZ**, Circuit Judge.

———————————————

The Ute Indian Tribe of the Uintah and Ouray Reservation[1] appeals a preliminary injunction ordering it not to proceed with litigation in tribal court against a nonmember former contractor, Lynn Becker. The district court ruled that although the parties' dispute would ordinarily come within the tribal court's jurisdiction, their Independent Contractor Agreement (the Contract) waived the Tribe's right to litigate in that forum.

The Tribe mounts two challenges to the preliminary injunction. First, it contends that the tribal-exhaustion rule, which ordinarily requires a federal court to abstain from determining the jurisdiction of a tribal court until the tribal court has ruled on its own jurisdiction, deprived the district court of jurisdiction to determine the tribal court's

———

[*] The Honorable Neil Gorsuch considered this appeal originally but did not participate in this Opinion. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. *See* 28 U.S.C. § 46(d); *see also United States v. Wiles*, 106 F.3d 1516, 1516, n* (10th Cir. 1997) (this court allows remaining panel judges to act as a quorum to resolve an appeal).

[1] The other two appellants are the Uintah and Ouray Tribal Business Committee (the Tribe's elected governing body) and Ute Energy Holdings, LLC (whose 100% owner and sole member is the Tribe). Because the arguments of the three appellants are identical in almost every respect, we will generally refer to them all as the Tribe.

jurisdiction. We do not agree that the rule is jurisdictional but agree that the district court should have abstained on the issue. Although the Contract contains a waiver of the tribal-exhaustion rule, Mr. Becker, on the record and arguments before us on this appeal, has not shown a likelihood of success based on the validity of the waiver. He has failed to adequately counter the Tribe's contention that the entire Contract, including the waiver, is void because it did not receive federal-government approval, as is required for contracts transferring property held in trust for the Tribe by the federal government. Second, the Tribe contends that even if exhaustion is not required, the preliminary injunction was improper because the Contract did not waive the Tribe's right to litigate this dispute in tribal court. Although the author, in a separate concurrence, believes the contention has substantial merit, the panel relies only on the first issue as ground for reversal.

In addition, the Tribe challenges the district court's dismissal of its claims under the federal civil-rights act, 42 U.S.C. § 1983, seeking to halt state-court litigation between it and Mr. Becker. We reject the challenge. The Tribe has not stated a claim under § 1983 because it is not a "person" entitled to relief under that statute when it is seeking, as here, to vindicate only a sovereign interest.

To resolve the remaining issues raised in this case, we adopt our decision in the companion case of *Ute Indian Tribe v. Lawrence*, No. 16-4154 (August 25, 2017).

## I.       BACKGROUND

In 2005 Mr. Becker and the Tribe executed the Contract, which made Mr. Becker a manager in the Tribe's Energy and Minerals Department.  He was to receive a salary of $200,000 and 2% of "net revenue distributed to Ute Energy Holding, LLC from Ute Energy, LLC."  Becker Compl. at Ex. 1 (the Contract), Aplt. App., Vol. I at 46.  The two LLCs are tribal entities "capitalized with . . . oil and gas interest[s] . . . held in trust for the Tribe by the United States."  *Id*. at Ex. 3 (Tribal Court Complaint), Aplt. App., Vol. I at 56.  Mr. Becker resigned in 2007.  He claims that the Tribe breached its compensation promises while the Tribe maintains that he was part of a scheme to defraud it out of valuable interests in oil and gas.

The parties' litigation began when Mr. Becker filed suit in the United States District Court for the District of Utah seeking damages.  The court dismissed the suit for lack of subject-matter jurisdiction because the claim did not arise under federal law.  We affirmed in *Becker v. Ute Indian Tribe*, 770 F.3d 944 (10th Cir. 2014).  Mr. Becker then filed suit in Utah state court in December 2014.  In July 2015 the state court rejected the Tribe's attempt to have the action dismissed on the grounds that the state court lacks jurisdiction and that the Tribe is protected by tribal sovereign immunity.  The Tribe sued in federal court the following June to enjoin the state proceeding on the ground that the state court lacks jurisdiction to hear the parties' dispute.  But the district court dismissed the Tribe's federal suit for lack of federal-court subject-matter jurisdiction.  That

4

dismissal is the subject of a separate appeal in this court. *See Ute Indian Tribe v. Lawrence*, No. 16-4154.

Having been unsuccessful in state and federal court, the Tribe turned to tribal court, seeking, among other things, declarations (1) that the Contract is void because it grants Mr. Becker a tribal trust asset without federal-government approval, in violation of both federal and tribal law, and (2) that its purported waiver of sovereign immunity in the Contract was executed in violation of tribal law. Mr. Becker responded on September 14, 2016, by filing this action against the Tribe and affiliated entities. The district court promptly granted Mr. Becker's request for a temporary restraining order against the tribal-court proceeding. While awaiting a hearing on Mr. Becker's request for a preliminary injunction, the Tribe filed counterclaims against Mr. Becker and third-party claims against the judge presiding over Mr. Becker's state action, including claims under § 1983 seeking an injunction against the state-court proceedings on the ground that they violate the Tribe's due-process rights. The district court later granted Mr. Becker a preliminary injunction. It also dismissed the Tribe's § 1983 claims without prejudice. And, adopting the decision by the district court in the related case of *Ute Indian Tribe v. Lawrence*, Case No. 2:16-CV-00579-RJS (Aug. 16, 2016), the court in this case dismissed the Tribe's remaining counterclaims and third-party claims for lack of jurisdiction. (We reverse the *Lawrence* dismissal today in a separate decision.)

5

## II.  THE PRELIMINARY INJUNCTION

We have jurisdiction under 28 U.S.C. § 1292(a)(1) to review the grant of a preliminary injunction by a district court.  "We review the . . . grant of a preliminary injunction for abuse of discretion.  A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings."  *Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 822 (10th Cir. 2014) (internal quotation marks omitted).  A party must establish four elements to obtain a preliminary injunction:  "(1) [that it has] a substantial likelihood of prevailing on the merits; (2) [that it will suffer] irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."  *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (internal quotation marks omitted).  "[E]ach of these elements is a prerequisite for obtaining a preliminary injunction . . . ."  *Id.*  We agree with the Tribe that Mr. Becker has failed to establish the first element because he has not shown a substantial likelihood that he can escape the tribal-exhaustion rule, which usually requires that the issue of tribal jurisdiction be decided by the tribal court in the first instance.

The tribal-exhaustion rule states that "absent exceptional circumstances, federal courts typically should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted."  *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1149 (10th Cir. 2011) (internal quotation marks

6

omitted).  The rule follows from the Supreme Court's recognition "that Congress is committed to a policy of supporting tribal self-government and self-determination." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985).  It ensures that "the forum whose jurisdiction is being challenged [is provided] the first opportunity to evaluate the factual and legal bases for the challenge."  *Id.*

The parties do not dispute these general propositions.  The only matters in dispute are the Tribe's contention that exhaustion is a matter of federal subject-matter jurisdiction and Mr. Becker's contention that exhaustion is not required because the Tribe waived exhaustion in the Contract.  We reject both contentions, holding that exhaustion is not a jurisdictional matter and that Mr. Becker has not satisfied his burden of showing waiver because he has failed to establish the validity of the Contract. [2]

## A.    Is the Exhaustion Rule Jurisdictional?

---

[2] Mr. Becker has also argued that the exhaustion rule does not apply because it is clear that the tribal court would lack jurisdiction to hear the dispute.  *See Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1238 (10th Cir. 2014).  But in the context of this case that argument does not present any additional issues.  Mr. Becker has not disputed that if the Contract is void, then the tribal court has jurisdiction and the exhaustion rule applies.  And the Tribe has not disputed that if the Contract is valid, then it waived the exhaustion rule.  Thus, at least as the matter appears before us on appeal, the applicability of the exhaustion rule turns solely on the validity of the Contract.

In addition, Mr. Becker asserts in a single sentence in his brief that exhaustion should not be required because the Tribe's invocation of tribal jurisdiction is in bad faith.  But we have recently held that the bad-faith exception to the tribal-exhaustion rule refers only to bad faith by the tribal court.  *See Norton v. Ute Indian Tribe of Unitah and Ouray Reservation*, 862 F.3d 1236, 1249 (10th Cir. 2017).  And Mr. Becker has not alleged such bad faith.

7

First, we address jurisdiction. To invoke federal jurisdiction under 28 U.S.C. § 1331, a plaintiff must "assert a claim arising under federal law." *Nat'l Farmers*, 471 U.S. at 850 (internal quotation marks omitted). The allocation of sovereign authority among the federal government, the states, and tribes is ordinarily a matter of federal law. *See, e.g.*, *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008) ("[W]hether a tribal court has adjudicative authority over nonmembers is a federal question."); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987) ("If state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law."). Hence, the federal district court had jurisdiction to hear the present dispute. *See Plains*, 554 U.S. at 324. Although it may appear that the exhaustion rule could then deprive the district court of that jurisdiction (because the result of exhaustion could be that the court never decides the issues brought before it), the Supreme Court has definitively declared that "[e]xhaustion is required as a matter of comity, not as a jurisdictional prerequisite." *Iowa*, 480 U.S. at 16 n.8. The Tribe's claim that exhaustion is required is not a matter of jurisdiction.

## B. Did the Tribe Waive the Exhaustion Rule?

Mr. Becker argues that the Tribe waived the exhaustion rule. He points to the Contract language stating, "[T]he Tribe . . . waives any requirement . . . that Tribal remedies be exhausted." Contract Art. 23, Aplt. App., Vol. I at 42. The Tribe responds, however, that any waiver is ineffective because the Contract is void for lack of approval

8

by federal authorities. It contends that the contractual transfer to Mr. Becker of "two percent (2%) of net revenue distributed to Ute Energy Holding, LLC from Ute Energy, LLC," Becker Compl. at Ex. 1 (the Contract), Aplt. App., Vol. I at 46, is a transfer of property held in trust by the United States for the Tribe and that any contract effecting such a transfer must be approved by the United States. The Tribe invokes several statutes requiring federal approval for such contracts,[3] but we need not parse those statutes because Mr. Becker does not contest that the oil and gas interests themselves are tribal trust property or that transfers of tribal trust property require federal approval. Rather, the issue is whether the payments to Mr. Becker constitute transfers of trust property. In support of its position the Tribe argues that the payments to Mr. Becker are akin to royalties, which, according to the Supreme Court, maintain the same trust status as the oil and gas assets themselves. *See United States v. Noble*, 237 U.S. 74 (1915). In *Noble* the Court held that the assignment of a royalty equal to a specified percentage of minerals mined or removed from the land of an Indian allottee violated a prohibition on alienation of the allotment. It wrote:

> It is said that the [agreements] contemplated the payment of sums of money, equal to the agreed percentage of the market value of the minerals, and thus that the assignment was of these moneys; but the fact that rent is to be paid in money does not make it any the less a profit issuing out of the land.

*Id.* at 80–81.

---

[3] The Tribe cites 25 U.S.C. §§ 81, 85, 177, 464, and 2102(a).

9

Mr. Becker's counterarguments are not persuasive. He provides a copy of a letter from the Bureau of Indian Affairs (BIA) stating that the Amended and Restated Ute Energy LLC Operating Agreement did not require federal approval. But the amended agreement itself is not in the record; and without examining it, it is impossible to determine whether it contains provisions similar to the 2% grant to Mr. Becker. Consequently, we cannot tell whether the BIA letter is relevant to the issue before us. If there is law exempting the Contract from the requirement of federal approval, Mr. Becker has not provided it to this court.

Second, Mr. Becker argues that even if the Contract required federal approval, the waiver provision is severable under the Contract's severability clause and therefore enforceable. He relies on *Stifel*, *Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184 (7th Cir. 2015), which held that "the fact that a contract may have been procured by fraud does not negate the validity of a forum selection clause; instead, we look to whether a forum selection clause *itself* was procured by fraud," *id*. at 199 (ellipses and internal quotation marks omitted). In this case, however, the issue is not fraud but invalidity for lack of a statutorily mandated federal approval. *See Oneida Cty. v. Oneida Indian Nation*, 470 U.S. 226, 245 (1985) ("conveyance without the sovereign's consent was void *ab initio*"); *Quantum Expl., Inc. v. Clark*, 780 F.2d 1457, 1459 (9th Cir. 1986). This court has said, in the context of an unapproved contract governed by the Indian Gaming Regulatory Act (IGRA), that "[i]t may be questioned whether any part of a contract determined to be void ab initio,

10

including the severability provisions, may be enforced." *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1177 n.5 (10th Cir. 2005). And *Stifel* itself did not question that circuit's decision four years earlier that a contract not approved as required by IGRA was void ab initio and not severable despite a severability clause in the contract. *See Wells Fargo Bank, Nat'l Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 699–700 (7th Cir. 2011) (contractual waiver of sovereign immunity held invalid). We agree with *Wells Fargo*.

Based on the record and arguments before us, the exhaustion rule applies, and the tribal court should consider in the first instance whether it has jurisdiction. For purposes of obtaining a preliminary injunction, Mr. Becker has not shown a substantial likelihood of success on the exhaustion issue.

## III.    THE TRIBE'S § 1983 CLAIMS

The Tribe also appeals the dismissal of its counterclaim and third-party claim brought under § 1983. We have jurisdiction to review the dismissal because the district court certified it as a final judgment under Federal Rule of Civil Procedure 54(b) shortly after the filing of the notice of appeal. *See* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim— . . .  the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . ."); *Ruiz v. McDonnell*, 299 F.3d 1173, 1179 (10th Cir. 2002) ("[A] notice of appeal filed before the district court disposes of all claims is . . .

11

effective if the appellant obtains . . . certification pursuant to Fed.R.Civ.P. 54(b) . . . before the court of appeals considers the case on its merits.").

The Tribe's § 1983 claims seek to enjoin Mr. Becker's state-court suit against it. The claims assert that Mr. Becker (in bringing his state action) and Utah District Judge Barry Lawrence (in presiding over it) are violating the Tribe's due-process rights "to not be subjected to unlawful claims of State authority and to not be deprived of liberty or property without due process of law and to pursue its property rights in a court of competent jurisdiction of its own choosing (the tribal forum)." Aplt. Br. at 21.

A claim under § 1983 can be brought only by a "citizen" or "person." 42 U.S.C. § 1983.[4] A tribe may or may not qualify as a person, "depend[ing] on whether the tribe's asserted right [is] of a sovereign nature." *Muscogee (Creek) Nation v. Okla. Tax*

---

[4] That statute provides in full:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis added).

12

*Comm'n*, 611 F.3d 1222, 1234 (10th Cir. 2010). We therefore must examine the nature of the claims brought by the Tribe.

The Tribe's complaint and appellate briefs could be clearer in stating the basis of its § 1983 claims. Although the Tribe invokes the Due Process Clause of the Fourteenth Amendment, it clearly is not arguing that it is being denied its procedural-due-process rights to notice and a hearing in the state-court proceedings. And although it cites and discusses *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), which held that the Due Process Clause forbids a state court from exercising jurisdiction over a person that has insufficient contacts with the state, we do not understand it to be alleging an insufficient-contacts claim. Rather, as best we can understand the Tribe's position, its complaint is simply that the state court lacks jurisdiction to hear the dispute brought before it. But the interest protected by legislation and case law limiting state-court jurisdiction over certain Indian matters is tribal sovereignty. *See Williams v. Lee*, 358 U.S. 217, 223 (1959) ("There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves."). In our view, the right being asserted here is, at its core, the right of tribal sovereignty. And in seeking to protect that right, the Tribe is proceeding in its sovereign capacity, not as a

13

"person" within the meaning of § 1983. Therefore, we affirm the district court's dismissal without prejudice of the Tribe's § 1983 claims.[5]

## IV. TRIBE'S REMAINING CLAIMS

Finally, the Tribe filed non-§1983 counterclaims and third-party claims that the district court dismissed for lack of jurisdiction. The Tribe's briefs in this court merely adopted the arguments it raised on those issues in the companion case of *Ute Indian Tribe v. Lawrence*. On that appeal we are reversing the district court's ruling that it lacked jurisdiction to consider the claims and are remanding for the court to decide the remaining issues in the first instance. *See Lawrence*, No. 16-4154. We adopt the same course here.

## V. CONCLUSION

We **REVERSE** the district court's preliminary injunction and **REMAND** to the district court to proceed consistently with this opinion. We **AFFIRM** the dismissal of the Tribe's § 1983 counterclaim and third-party claim. And we **REVERSE** the district court's dismissal for lack of jurisdiction of the Tribe's remaining counterclaims and third-party claims and **REMAND** to the district court for further proceedings.

---

[5] We recognize that Ute Energy Holdings, LLC, is also a plaintiff. But we said in *Lippoldt v. Cole*, 468 F.3d 1204 (10th Cir. 2006), that unincorporated associations are not persons entitled to sue under § 1983, and Ute Energy has presented no argument why an LLC should be distinguished from other unincorporated associations in this respect.

16-4175, *Becker v. Ute Indian Tribe*

**HARTZ,** Circuit Judge, concurring:

Shortly before oral argument the three-judge panel assigned to this case issued an order staying the district court's preliminary injunction preventing the Tribe from pursuing a lawsuit against Mr. Becker in tribal court arising out of the Agreement. *See* Order of Dec. 30, 2016. We gave two reasons why we thought the Tribe had shown a likelihood of success on the merits of its appeal. One was the ground relied upon by the panel opinion issued today: the likelihood that the Agreement is void for lack of federal approval. The other was our doubt that the Agreement waived tribal jurisdiction. I add the following remarks to expand upon the reason for that doubt. I hope the remarks will serve two purposes. First, it is possible that on further proceedings in the district court it will become apparent that federal approval of the Contract was unnecessary (or, perhaps, granted). In that event, it will be necessary to determine whether the Contract in fact waived tribal jurisdiction. A discussion of the reasons for questioning whether there was a waiver may help counsel for both parties in the presentation of evidence and argument on that question. Second, and more importantly, the discussion may encourage greater clarity in the language of future contracts.

The district court held that the following language in the Contract waived the jurisdiction of the tribal court:

> The Parties hereto unequivocally submit to the jurisdiction of the following courts: (i) U.S. District Court for the District of Utah, and appellate courts therefrom, and (ii) if, and only if, such courts also lack jurisdiction over such case, to any court of competent jurisdiction and associated appellate courts or courts with jurisdiction to review actions of such courts. The court or courts so designated shall have, to the extent the Parties can so

> provide, original and exclusive jurisdiction, concerning all such Legal Proceedings, and the Tribe waives any requirement of Tribal law stating that Tribal courts have exclusive original jurisdiction over all matters involving the Tribe and waives any requirement that such Legal Proceedings be brought in Tribal Court or that Tribal remedies be exhausted.

Contract Art. 23, Aplt. App., Vol. I at 42.  I have doubts about that ruling.

To begin with, clause (ii) of the waiver governs because this court has already resolved that the Utah federal district court (the preferred forum under clause (i)) lacked jurisdiction to hear Mr. Becker's contract claim.  *See Becker*, 770 F.3d at 949.  Under clause (ii) the parties submit to the jurisdiction of "any court of competent jurisdiction." "A court of competent jurisdiction is a court with the power to adjudicate the case before it." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017).  Mr. Becker acknowledges that "the tribal court is, in general, a 'court of competent jurisdiction.'" Becker's Mot. for Recons. of Stay of Prelim. Inj. at 4.

Further, the language in the waiver provision makes little sense unless it permits tribal courts to hear the parties' disputes.  In particular, the provision refers to "any court of competent jurisdiction and associated appellate courts or *courts with jurisdiction to review actions of such courts*." Contract Art. 23, Aplt. App., Vol. I at 42 (emphasis added).  The emphasized language serves no purpose if only state or federal courts are considered courts of competent jurisdiction because any state or federal court "with jurisdiction to review actions of [federal or state] courts" is already adequately described as an "associated appellate court[]."  Mr. Becker suggests that the purpose of the emphasized language is to include certiorari review by a state high court of state-court

decisions or certiorari review by the United States Supreme Court. But the standard

definition of *appellate court*—"A court with jurisdiction to review decisions of lower

courts or administrative agencies," Black's Law Dictionary 430 (10th ed. 2014)—

encompasses courts with certiorari review. [1]   In contrast, the language does make sense

when applied to tribal courts. It would encompass organizations (such as those

associated with law schools) that handle appeals from tribal courts. *See* Samantha A.

Moppett, Acknowledging America's First Sovereign: Incorporating Tribal Justice

Systems into the Legal Research and Writing Curriculum, 35 Okla. City U. L. Rev. 267,

302 (2010) ("Many of the tribes that do not have their own appellate courts are members

of, or will contract with, a regional inter-tribal court system that hears appeals of tribal

trial court decisions."). Courts try to construe contract language to give effect to every

word. *See WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1144 (Utah 2002)

("[W]e consider each contract provision . . . in relation to all of the others, with a view

toward giving effect to all and ignoring none." (internal quotation marks omitted));

Restatement (Second) of Contracts § 203 (Am. Law Inst. 1981) ("In the interpretation of

a promise or agreement or a term thereof, the following standards of preference are

generally applicable:  (a) an interpretation which gives a reasonable, lawful, and effective

meaning to all the terms is preferred to an interpretation which leaves a part

unreasonable, unlawful, or of no effect."). I would construe "court[s] of competent

---

[1]Also, if the sole purpose of the emphasized language is to include review by the United
States Supreme Court of state-court decisions, surely the drafters would have chosen to
write "United States Supreme Court" rather than "courts with jurisdiction to review
actions of such courts."

jurisdiction" to include tribal courts, which gives effect to the language "courts with jurisdiction to review actions of such courts."

Mr. Becker relies on language later in the waiver provision. But that language cannot overcome the clear import that tribal courts can hear the parties' disputes. Although the last sentence of the waiver does waive any requirement that the tribal court have exclusive jurisdiction or that tribal remedies be exhausted, it does not say that the tribal court lacks *any* jurisdiction. To say that a court does not have "exclusive" jurisdiction is not to say that it has no jurisdiction. The sentence just permits another court also to have jurisdiction. All the waiver-of-exclusive-jurisdiction language does is make clear that federal courts under clause (i) and state courts that may be competent under clause (ii) are not excluded from jurisdiction simply because the tribal court may have jurisdiction. In other words, to say that one is *not required* to proceed in tribal court is not to say that one is *prohibited* from doing so. The Tribe does not relinquish tribal-court jurisdiction altogether just by relinquishing exclusive jurisdiction.[2]

---

[2] Mr. Becker relies on *Stifel,* 807 F.3d 184, to support his contention that the waiver provision excludes tribal-court jurisdiction. But rather than helping him, that decision emphatically illustrates that when parties wish to exclude tribal-court jurisdiction, they can express that wish in straightforward language quite unlike the provision in the Contract. The *Stifel* provision stated:

> The [tribal] Corporation *expressly submits to and consents* to the jurisdiction of the United States District Court for the Western District of Wisconsin (including all federal courts to which decisions of the Federal District Court for the Western District of Wisconsin may be appealed), and, in the event (but only in the event) the said federal court fails to exercise jurisdiction, the courts of the State of Wisconsin wherein jurisdiction and venue are otherwise proper, for the adjudication of any dispute or controversy arising out of this Bond, the Indenture, or the Bond Resolution

4

There *is* language in the waiver provision that *does* give me pause: "The court or courts so designated shall have, to the extent the Parties can so provide, original and exclusive jurisdiction . . . ." Contract Art. 23, Aplt. App., Vol. I at 42. It is not clear to me what it means to say that "court*s*," in the plural, have exclusive jurisdiction, since "exclusive" generally refers to a single entity. Perhaps it means that either the court designated in clause (i) shall have exclusive jurisdiction or the courts designated in clause (ii) shall, as a class, have exclusive jurisdiction; but it would seem that all other courts are already excluded because they are not courts of competent jurisdiction. Or perhaps the excluded tribunals are not courts but government agencies. It is also unclear what it means to say that the jurisdiction of the designated courts is exclusive "to the extent the Parties can so provide." At oral argument Mr. Becker suggested for the first time that this language means that once one party has filed suit in a proper court, all parties would do their best to keep the issues from being litigated in a different court. But surely that would not preclude party A from seeking to litigate in its chosen forum even though party B had previously initiated suit in a forum that party A does not believe to be a "court of competent jurisdiction." (Recall that the Tribe contends that the state court lacks jurisdiction over this dispute.)

In any event, the puzzling language does not distinguish tribal courts from state courts. Mr. Becker appears to argue that because the waiver strips the tribal court of

and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith, *to the exclusion of the jurisdiction of any court of the Corporation.*

*Id.* at 197 (emphasis added).

*exclusive* jurisdiction, it could not be a court provided "exclusive" jurisdiction in the waiver. But state courts also do not have exclusive jurisdiction. If the "shall have . . . original and exclusive jurisdiction" language excludes tribal-court jurisdiction, it would likewise exclude state-court jurisdiction, an absurd result.

I hope this is the last time courts have to construe a waiver clause with such obscure language.

<u>Becker v. Ute Indian Tribe</u>, No. 16-4175

**EBEL**, Circuit Judge, concurring.


In this appeal resolved by a two-judge panel, we have reached a unanimous panel decision as to the disposition of the appeal. Judge Hartz, however, has added a concurrence to express his further views on an issue that is neither dispositive or relevant to our panel decision. His concurrence would be dicta, even if its discussion were included in the panel's opinion. Our panel decision expressly does not address the meaning of the language used by the parties in their Contract generally and, in particular, the language the parties included in the Contract's provision addressing in what court the parties' disputes should be resolved. Before that question ever comes before this Court, the meaning of the Contract's language would have to be raised to and addressed first by a trial court with appropriate jurisdiction and then appealed. Assuming that the rules of evidence would allow it, an interpretation of the Contract might profit from parol evidence addressing what the parties intended by their ambiguous language regarding in what court the parties' disputes should be resolved.

All this is simply to say that, although I join our two-judge panel opinion, I do not join Judge Hartz's concurrence and I believe that there is currently an insufficient record before us to address the issues Judge Hartz discusses in his concurrence.